### LOUISE ADLER v. INTERSTATE POWER COMPANY AND ANOTHER.[1]

April 17, 1930.

No. 27,849.

[1]Reported in 230 N. W. 486.

*Christensen & Ronken,* for relator.

*W. C. Fraser, W. F. McNamara* and *Briggs, Weyl & Briggs,* for respondents.

DIBELL, J.

Certiorari to review the order of the industrial commission denying compensation to Louise Adler, the widow of Edward F. Adler, who died while in the employ of the Interstate Power Company. The Fidelity & Casualty Company is the insurer.

■ On September 27, 1928, the decedent Adler was in the employ of the Interstate Power Company in its plant at Rochester, Minnesota, as a stoker. He commenced work at one o'clock in the afternoon. His first work was the pulling out of a charge from one of the upper retorts. The evidence is that this one was more than ordinarily a hard charge to handle and that Adler was subjected to the fumes of the coal and coke, perhaps more so than was usual. When he got his charge out and was about to refill he complained of a pain in his head and across his chest, and he felt sick and vomited severely. He sat down on his wheelbarrow and later went to the basement and lay down on a lounge. A few hours later he was taken to his home and put in a chair from which he fell in a few moments and died.

An autopsy was had. It was a thorough one. Dr. Mills, pathologist in the Mayo Clinic, who had had long experience in performing autopsies, said that he considered the body that of the healthiest man whose body he had ever examined. His opinion was as follows:

"My opinion is that, anything I know of the facts observed by me and those heard from the testimony of others, Edward Adler arrived at his death as a result of probably inhalation or injection of some poisonous substances, presumably derived in some way or other from the destructive distillation of coal."

So far as could be, all other causes than the inhalation or injection of poisonous substances coming from the distillation of coal

were eliminated. The conclusion of the doctor was not disputed. No cause other than the one he assigned was suggested. If compensation is denied, the opinion reached by a competent pathologist, given with a rather definite degree of certainty, after as thorough an autopsy as could be performed, and under as favorable conditions as could be had, must go for naught and the cause of the death held unascertained. This cannot be so. It is true that the doctor could not testify as to an exact certainty. He could not give the definite gas or poison or combination which brought the result; and it is true that he admitted under cross-examination that in reaching results there might be such a thing as conjecture or speculation. But we have fairly given his view. There is no question of credibility. The burden of proof is of course on the plaintiff, and she cannot rest a recovery merely on speculation or conjecture. In the practical administration of the compensation act the unassailed opinion of the doctor, with the uncontradicted circumstances attending supporting it, should be taken as a correct statement of the cause.

There is raised the question whether, conceding that death came from an inhalation or injection of gas or poison, it was an accident. The statute defines accident as "an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body." G. S. 1923 (1 Mason, 1927) § 4326 (h). We think the evidence shows an accidental injury. 6 Dunnell, Minn. Dig. (2 ed.) § 10396, and cases cited.

An attorney's fee of $75 is allowed in this court.

Order reversed.