DONNA B. TILLMAN v. STANLEY IRON WORKS AND ANOTHER.[1]

November 8, 1946.

No. 34,231.

1Reported in 24 N. W. (2d) 903.

422

*Arthur LeSueur,* for relator.
*Reynolds & McLeod,* for respondents.

JULIUS J. OLSON, JUSTICE.

Certiorari brings for review an order of the industrial commission denying compensation to the widow of Wallace B. Tillman, deceased employe of respondent Stanley Iron Works.

The matter was first heard and determined by a referee of the commission, who found that the employe, on September 29, 1944 (par. III), "died of diseased conditions which were not caused, aggravated or accelerated by any accidental injury arising out of" his employment. And, further, that the employe's death (par. IV) "was not due to an occupational disease within the provisions of" L. 1943, c. 633. His conclusion was that the application for compensation "should be and the same is hereby denied." Relator's appeal to the commission resulted in an affirmance. It adopted the findings of fact of the referee as its "findings and decision," all members thereof being in agreement.

In her brief relator states:

"The substantial issue in this case is whether or not the nitrous fumes of the welding operations during the seven-month period caused or accelerated previous physical conditions which terminated the life of Wallace B. Tillman.

"With reference to this proposition, the findings of the referee ([Record] p. 275, ff. 2 and 3) are in error that Tillman's death was due to natural causes resulting in another error, the disallowance of compensation."

Relator assigns two errors, namely, that the commission erred in affirming the findings of the referee contained in paragraphs III and IV, from which we have quoted, and that it also erred in denying compensation under the provisions of L. 1943, c. 633. Under her second assignment, she concludes with this statement:

"It is believed of little or no value to enter into an analysis of *the medical testimony* which, of course, *is the chief nub of this case* and analyzing briefly the medical testimony in argument and before doing so cite the Court to the following authorities, the perusal of which should be helpful in properly weighing the matter of argument *and the weight and probative value of testimony.*" (Italics supplied.)

Relator's claim for compensation is based upon the assertion that her husband, during the time of his employment, was acciden-

tally injured by inhaling nitrous oxide fumes in the course of his work; hence that the injury was one arising out of and in the course of his employment.

The employe worked for his employer from May 29 to November 13, 1943. He was an arc welder. In the doing of such work, fumes and smoke are generated, and these mix with the surrounding atmosphere. Tillman used a hood to cover his face while working, but in spite of this fumes seeped through the hood so that he inhaled some of the fumes or gases. Relator contends that the nitrous oxide fumes so inhaled resulted in nitrous oxide poisoning. Therefore, she contends, her husband's death was directly traceable to his employment, and compensation should follow as a matter of course. That is her sole claim. But mere claims or assertions do not answer the problems presented to the triers of fact. Since we are not the triers of fact, but only a court of review, the question for us to determine is whether the record is such as to justify us in holding, as a matter of law, that the statutory triers have erroneously determined the fact issues.

Respondents claim that relator's evidence falls far short of proving the facts to be as she claims. They say that only by resorting to the medical testimony adduced by relator can the history of employe's case, upon which her cause depends, be ascertained. That history was what Tillman had given to Dr. Charles W. Mills, who was his medical guide and attendant and the man who testified for relator as her expert. Such testimony, respondents say, can be used only to show the basis upon which the doctor treated his patient, not to prove the facts of the patient's recital.

The subject presented is of necessity a highly technical one. It is not easily proved or disproved. The record discloses that even relator's medical testimony concedes that at least 25 parts of nitrous oxide per million is a safe limit. The same kind of testimony for respondents places the limit at 40 parts per million. Actual tests since made show that in the circumstances here given the highest concentrate of nitrous oxide was four parts per million, less than one-fourth of what Dr. Mills deemed permissible.

Going now to the statement of relator's counsel that the medical testimony is "the chief nub of this case," we are met with what are clearly issues of fact.

A post-mortem was had, and clinical findings based thereon have been brought into the record. Medical testimony for respondents is to the effect that decedent suffered from a condition of nephritis so far advanced as to be an adequate explanation for his death. Relator's medical testimony admits that decedent did have some degree of nephritis. Dr. J. S. McCartney, for respondents, using relator's clinical data, post-mortem findings, and slides, testified that the nephritis was so far advanced that it would adequately account for Tillman's death. This was sustained by other medical testimony for respondents.

The conclusion expressed by these witnesses as to the immediate cause of death definitely accounts for all of the clinical picture preceding death. The post-mortem findings, in view of the diagnosis of primary kidney disease made by these witnesses, cannot be cast aside as being without probative force. They could well be made the basis for the conclusion reached below. Then, too, it is well to bear in mind that post-mortem findings are objective. The medical testimony is in substantial accord as to these findings. Therefore, all parties must reconcile these objective facts on the basis of medical reasoning, knowledge, and experience. It is not for us to say that the triers of fact failed to give due heed, weight, and consideration to relator's claims.

■ Upon relator rests the burden of proving her cause. Adler v. Interstate Power Co. 180 Minn. 192, 230 N. W. 486; Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 18 N. W. (2d) 121.

Such burden "may be made out by a fair preponderance of evidence. The proof to establish the relation of cause and effect between an injury and a subsequent death or ailment must be such as to take the case out of the realm of speculation and conjecture, but if it furnishes a reasonable basis for an inference that the injury was the cause of the death or ailment it is sufficient." 6 Dunnel, Dig. & Supp. § 10406.

426

■ What we said in Susnik v. Oliver I. Min. Co. 205 Minn. 325, 331, 286 N. W. 249, 252, is also appropriate here:

"For us this has been essentially a fact case, with the usual terminal question of law, whether the evidence has such substance as to support the inference or deduction implicit in and necessary to sustain the affirmative conclusion. In denying validity for the two hypotheses for claimant, we have applied to opinion testimony, on which they were based, the simple rule that an affirmative finding cannot be sustained upon mere conjecture, as distinguished from real deduction. This rule applies to opinion evidence, even that of the best of experts."

■ Even though an employe is afflicted with a disease which would eventually result in his death, that does not bar his dependents from the right to recover for his death if he suffered an accident which arose out of and in the course of his employment, and this is so even if such accident intensified or aggravated his condition or affliction, provided the accident was a contributing cause of his death. Jacobs v. Village of Buhl, 199 Minn. 572, 273 N. W. 245.

■ In our recital of the facts and the contentions of the parties, we have referred to the testimony of Dr. Mills, a medical expert for relator. We think respondents' statement of the applicable law is substantially correct. In Faltico v. Minneapolis St. Ry. Co. 198 Minn. 88, 89, 268 N. W. 857, we said:

"* * * the well founded and long established rule is thus stated in an annotation in 65 A. L. R. 1217, 1219:

" 'The opinion of a physician or surgeon as to the condition of an injured or diseased person, based wholly or in part on the history of the case, as told to him by the latter on a personal examination, is inadmissible where the examination was made for the purpose of qualifying the physician or surgeon to testify as a medical expert.' "

In Olson v. Trinity Lodge, 217 Minn. 162, 164, 14 N. W. (2d) 103, 104, we held:

"* * * Even though a doctor may examine a patient for the sole purpose of qualifying himself as an expert witness, his opinion is competent evidence *if based on his examination and not on a history given him by the patient.*" (Italics supplied.)

In Sund v. C. R. I. & P. Ry. Co. 164 Minn. 24, 27, 204 N. W. 628, 629, we stated the reason for the rule in this language:

"* * * To permit a physician to give his opinion based upon the record in this case would be to have an expert opinion based upon supposed facts resting only on hearsay and not supported by an oath."

■ This court has often said that the findings of the industrial commission on questions of fact will not be disturbed unless consideration of the evidence and the permissible inferences require reasonable minds to adopt contrary conclusions. Budd v. C. Thomas Stores Sales System, Inc. 209 Minn. 490, 296 N. W. 571.

■ A careful review of the entire record leaves no doubt that the result reached by the commission is adequately sustained by the evidence. It therefore follows that the findings and order here for review must be affirmed.

So ordered.