## GUS LIAKOS v. YELLOW TAXI COMPANY OF MINNEAPOLIS AND ANOTHER.[1]

November 7, 1947.

No. 34,446.

---

[1] Reported in 29 N. W. (2d) 481.

*George C. Stetson* and *Ernest F. Jacobson,* for relator.
*Fred A. Ossanna* and *Carl K. Lifson,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review a decision of the industrial commission affirming the findings of a referee denying a claim for additional compensation.

Relator, an employe of respondent Yellow Taxi Company of Minneapolis, was injured in an accident on November 9, 1943, when a cab which he was driving collided with a streetcar bus in Minneapolis. In attempting to avoid the accident, he twisted to the right in such a manner as to expose his left side to the steering wheel. As a result, according to his testimony, he received injuries "at the level of the lower ribs" on his left side when he came in contact with the steering wheel. He was taken to Eitel Hospital and examined by Dr. George D. Eitel, who diagnosed the case as "contusion to his left chest region." Relator at that time complained of pains in the

left chest. While in the hospital, X rays were taken of his chest and ribs, and these showed no evidence of fracture; nor were there any lacerations, bruising, or discolorations of any kind on the chest, according to Dr. Eitel. Relator remained in the hospital until November 13 and under Dr. Eitel's care until December 14. Between November 13 and December 14, he was examined several times, and it was Dr. Eitel's opinion that on December 14 relator had recovered from the results of the accident and was able to return to work. About December 20, relator obtained work in a restaurant, and on December 21 he signed a final receipt for compensation for disability in the amount of $116.70 and for the further sum of $66.80 for medical expenses.

Relator commenced this proceeding in March 1946, alleging in his petition that the character and extent of his injuries were "severe injury to his left side, chest, hernia, and that the severe contusion to his chest aggravated the condition of his heart by causing same to be abnormally enlarged." On April 30, May 13, and June 20, 1946, hearings were had before a referee for the industrial commission, who found that relator had sustained an accidental injury on November 9, 1943, arising out of and in the course of his employment, as a result of which he was temporarily totally disabled for five and five-sixths weeks, for which he had received compensation. The referee denied relator's petition, and upon appeal the industrial commission affirmed the findings of the referee.

At the time of the hearing relator was 53 years old and weighed 156 pounds. He was five and one-half feet tall. He had lived in Minneapolis since 1912 and had driven a cab for about 14 months prior to the accident. Before that he had worked for a railroad company, had operated his own dumping truck, and had done various kinds of work in Minneapolis. In 1939, he had done some work in Chicago for a time peddling vegetables to restaurants. While there, he suffered a face injury and was in the hospital about eight months. He had another car accident in April 1946, when he said he received some injuries to his chest and face. Relator claims that he had no difficulty in performing the heavy manual labor required in any of

the various jobs he had held before the accident of November 9, 1943. Subsequent to that accident and about December 20, 1943, he commenced work in a restaurant in Minneapolis. His work was mostly that of cashier, but at times he was required to "bus" dishes, which meant carrying a load of 30 to 35 pounds. In attempting to carry these loads, he claims that he suffered pain in his left side in the lower rib region, weakness, and shortness of breath, and that he was unable to carry on his work. After five or six months he was laid off. In July 1944, he went to work in a Duluth steel mill as a greaser. He contends that he was unable to hold this job because of pain suffered in bending and lifting and that he quit or was laid off in October 1944. He then returned to Minneapolis, and from that time until the commencement of this action he held several jobs for short periods of time. In all of them he claims that he was unable to do the required lifting because of pain in his left side. He testified that he was and still is unable to lift more than 30 pounds without suffering pain in his left side.

There is some testimony in the record tending to show the presence of an inguinal hernia and an enlarged heart caused or aggravated by relator's injury of November 9, 1943. However, three medical witnesses testified that relator did not have such a hernia and that, while there was a slight enlargement of the heart, it was no more than normal for a workingman of relator's age.

It is relator's contention that he suffers from a ventral hernia as a result of the accident, that the hernia causes the pain in his left side, and that this has resulted in his incapacity. Two medical witnesses gave testimony in regard to the ventral hernia. Both agree that relator is suffering from a separation of the muscle tissues of the abdomen extending from the navel to the breastbone. They were not in agreement further than this. Dr. J. F. Corbett, who first examined relator about May 1 and again on May 16, 1946, said that in his opinion relator suffered from a ventral hernia caused by separation of the muscles of the abdomen, and that the injury of November 9, 1943, "started this hernia and it gradually developed through the course of considerable time." Dr. E. C. Robitshek first

38

examined relator on December 30, 1943, and again on May 20 and May 24, 1946. He testified that the physical record he made at the time of the December 30 examination (which was only about seven weeks after the accident) was absolutely negative so far as any external evidences of injury at that time were concerned; that "there were no bruises, discolorations, scratches; no tumor or masses or hernia; * * * no ventral or inguinal hernia," and no indication of heart trouble. After making the May 1946 examinations, Dr. Robitshek testified that relator had "what we call a diastasis, which means a separation of the muscles and it is not a hernia. With a hernia you must have a sac, which he does not have." It was his opinion that the accident of November 9, 1943, had no causal connection with the diastasis which he found. Further, he stated that a ventral hernia could not be caused by trauma and that in 40 years of practice he had never heard of a case in which trauma caused a ventral hernia. Aside from Dr. Robitshek and Dr. Corbett, no other medical witness found the muscle separation or ventral hernia.

█ The burden of proving his cause rests upon relator. Tillman v. Stanley Iron Works, 222 Minn. 421, 425, 24 N. W. (2d) 903, 905, and cases cited.

"A claim for compensation may be made out by a fair preponderance of evidence. The proof to establish the relation of cause and effect between an injury and a subsequent death or ailment must be such as to take the case out of the realm of speculation and conjecture, but if it furnishes a reasonable basis for an inference that the injury was the cause of the death or ailment it is sufficient." 6 Dunnell, Dig. § 10406.

█ It appears from the evidence that at the time of the hearing before the referee relator was suffering from some sort of disability. The question is whether the accident of November 9, 1943, caused or had any causal connection with relator's condition at the time he commenced this action. There remains, then, to determine whether relator has proved by a preponderance of the evidence that his dis-

ability resulted from and was caused by that accident. In determining whether the facts and the reasonable inferences to be drawn from them sustain the findings of the industrial commission, the evidence must be viewed in the light most favorable to such findings. Larson v. Le Mere, 220 Minn. 25, 29, 18 N. W. (2d) 696, 699, and cases cited. See, also, Kiley v. Sward-Kemp Drug Co. 214 Minn. 548, 549, 9 N. W. (2d) 237, 238. Also, this court has often said that the findings of the industrial commission on questions of fact will not be disturbed unless a consideration of the evidence and the permissible inferences require reasonable minds to adopt contrary conclusions. Tillman v. Stanley Iron Works, 222 Minn. 421, 24 N. W. (2d) 903, *supra;* Budd v. C. Thomas Stores Sales System, Inc. 209 Minn. 490, 296 N. W. 571; 6 Dunnell, Dig. & Supp. § 10426.

Here, the determination of the question whether the injuries sustained by relator on November 9, 1943, caused or had a causal connection with his present disability, as claimed by relator, necessarily depended upon the medical testimony. Dr. Eitel, who attended relator immediately after the accident, claimed that he had recovered from the results of the accident when he went to work in the restaurant about December 20, 1943. Dr. Robitshek, who examined relator on December 30, 1943, about seven weeks after the accident, concluded that the original accident had nothing to do with his present condition. Dr. R. R. Heim, who first examined him on February 10, 1944, claims to have found a small indirect hernia in the left inguinal region and some heart enlargement. It was his opinion that the accident of November 9, 1943, was an aggravating cause of the chest pain and a definite cause of the inguinal hernia. Dr. Corbett did not see relator until May 1, 1946, about two and one-half years after the accident. It was his opinion that relator suffered from a ventral hernia and that the injury of November 9 started this hernia. Dr. Robitshek, in his examination of December 30, 1943, found no external evidence of any injury at that time, but in his May 1946 examinations did find a separation of the muscles. He said that it was not a hernia and that this separation of the muscles had nothing to do with the injuries sustained in the November 1943 accident.

None of the doctors except Dr. Heim found an inguinal hernia, and there was testimony that the so-called heart enlargement was not abnormal for a man of relator's age.

The referee heard all this testimony, and the industrial commission reviewed it on appeal. The decision of the industrial commission was an affirmance of the findings and determination of the referee denying relator's petition. We believe, after a careful review of the record, that the result reached by the commission is adequately sustained by the evidence. It therefore follows that the findings and order here for review must be affirmed.

So ordered.

---

[1] Reported in 29 N. W. (2d) 448.