# PAUL SCHMOLL v. J. W. CRAIG COMPANY AND OTHERS.[1]

May 13, 1949.

No. 34,855.

*Maugridge S. Robb,* for relators.

*Ralph Foster,* for respondent Paul Schmoll.

*Strong, Strong & Tully,* for respondents J. W. Craig Company and Hartford Accident & Indemnity Company.

[1]Reported in 37 N. W. (2d) 539.

MATSON, JUSTICE.

Certiorari to review a decision of the industrial commission awarding compensation to Paul Schmoll, an employe of the J. W. Craig Company, hereinafter called the employer.

Schmoll since prior to 1942 operated a truck used to spray road construction oil. On two separate occasions, he sustained an injury to his back, first on June 1, 1942, when he was lifting a heavy fifth wheel of the truck, and again on June 24, 1946, when he reached to the floor of the truck cab to jerk a lever upward to start the oil-spraying mechanism. Each time the injury sustained manifested itself as a "catch" in the back accompanied by severe pain. Although the same employer was involved in each instance, there were two different insurers. In 1942, the employer was insured by the Hartford Accident and Indemnity Company (herein called the Hartford company), and in 1946 by the Bituminous Casualty Corporation (herein called the Bituminous company).

After the 1946 accident, Schmoll worked without interruption until October 4, 1946, when the pain in his back became so severe that he could not continue. In November, he was operated upon for a herniated inter-vertebral disc. April 28, 1947, he returned to his regular employment. In his petition for compensation, he alleged that the injury arose out of and in the course of his employment and *resulted from both the 1942 and the 1946 accidents.* His claim for compensation and medical benefits was allowed by the commission against the employer and the Bituminous company (the 1946 insurer), but dismissed as to the Hartford company (the 1942 insurer).

Relators, the Bituminous company and the employer, contend that the evidence requires a finding that the accident of 1942, in a natural and unbroken sequence, was the original producing cause of the central prolapse of the inter-vertebral disc (rupture of the outer covering of the disc), which was followed by a normal degeneration, resulting in a complete herniation (impingement upon the nerves in the spinal cord) and final disability shortly after the 1946 accident. If this contention be valid, the Hartford company,

as the 1942 insurer, is liable. A more complete consideration of the evidence is therefore necessary. The pain in Schmoll's back, with respect to both the 1942 and 1946 accidents, was on all occasions centered in the same area of his spine. June 10, 1942, the employer filed a report of his injury with the industrial commission. Although the Hartford company paid certain medical fees, Schmoll received no compensation for disability. During the interval of time between the 1942 and the 1946 accidents, he intermittently experienced pain in his back and occasionally for relief wore a wide motorcycle belt when going on long trips. In lifting he had to be careful. From time to time, he sought relief from pain through the application of hot packs.

On June 24, 1946, when he sustained the "catch" and accompanying pain in his back, he continued to do his work. During the ensuing week, the oil-spraying lever was operated by his assistant. He suffered pain in his back for about two weeks. Then came a period of several weeks in which he was completely free of pain. Later, however, pain began occurring in his left hip for several hours after arising in the morning, and this pain gradually spread downward into his leg and became more intense and of longer duration. Finally the pain became constant. On October 4, 1946, he discontinued work, and in November he was operated upon for the removal of the herniated inter-vertebral disc.

The medical testimony is in conflict as to whether the June 1, 1942, or the June 24, 1946, accident was the initial cause of claimant's final disability. Three experienced medical experts testified as to the cause of claimant's final disability, and each of them gave a plausible medical reason for his expressed opinion. Two of the doctors were of the opinion that the 1942 accident was the initial cause, while the third, Dr. Hultkrans, was of the opinion that the 1946 accident was the original cause. The latter testified that in his opinion the 1942 accident produced no prolapse of the inter-vertebral disc which would affect the nerve roots, but resulted only in muscular rather than nerve disturbance. It was his further opinion that the 1946 accident was an aggravating factor in the

prolapse of the disc. He found corroboration for this diagnosis in the subsequent appearance of pains in the leg. He said that if trauma occurred to the disc these symptoms should, as they did here, develop within a period of six months.

Although we have a definite conflict in medical testimony, it is contended that under circumstances similar to those here existing we should adopt a definite theory of the cause of injury-producing disability as a basis for determining compensability in all herniated inter-vertebral disc cases. In support of this contention, relators have submitted a detailed and comprehensive brief. It is asserted that the problem is simple of statement and simple of solution. All we need to do, it is urged, is to make a permanent choice between two theories by either holding that (1) compensability in all cases is to be related to the accidental circumstances which first brought about a sudden and unexpected change in the bodily structure when the first fibers gave way to produce a structural weakness without regard to whether such structural weakness was followed by immediate disability or by eventual disability through an unbroken sequence of pathological degeneration; or (2) by holding in all cases that compensability attaches only to those accidental circumstances which immediately and finally bring about a disabling protrusion of the inter-vertebral disc and that the traumatic or accidental circumstances which originally brought about a structural weakness do not furnish a basis of liability for compensation, in that they cause no immediate disability but only a predisposition to future disability.

Relators allege, no doubt with truth, that in some cases a finding of fact is based on one theory and in other cases on the opposite theory. They plead for a certain and unchanging rule of thumb whereby all compensability may be measured without variation between individual cases. Obviously, if we were to adopt a standard medical theory for all cases, we would be invading the medical field and riding roughshod over the differences in opinion and theory held by medical experts. Desirable as it may be to find a rule of diagnosis by which the cause of compensable disability may be

measured in all cases, it is not for us to prescribe the theory upon which all medical experts must base their testimony. Relators' prayer for certainty should be addressed to the medical profession and not to the courts. After having thus denuded relators' argument of its turkey-gobbler plumage, we find only the carcass of a hummingbird in form of the simple issue of whether the findings of the commission are sustained by the evidence.

In determining whether the facts and the reasonable inferences to be drawn from them sustain the findings of the industrial commission that Schmoll became disabled on October 4, 1946, as a result of the June 24, 1946, accident, the evidence must be reviewed in the light most favorable to such findings.[2] In the light of the evidence as a whole, we cannot say that the commission's findings are not sustained. Two outstanding medical experts were of the opinion that the disability was traceable to the injury resulting from the 1942 accident. On the other hand, a third medical expert, Dr. Hultkrans—a physician testifying for the Hartford company— was of the opinion that Schmoll's disability was caused by the 1946 accident. The latter's testimony was plausible and sufficient to sustain the commission's finding. We have always given the workmen's compensation act a liberal interpretation to assure the employe of the protection intended. When it comes to a question of cause and effect, the conclusion must be left to the industrial commission, where the evidence is conflicting and will sustain a finding either way. Johnson v. Pillsbury Flour Mills Co. 187 Minn. 362, 245 N. W. 619. A mere preponderance of medical testimony does not prevent a trier of fact from reaching a conclusion to the contrary where such conclusion is sustained by other reasonable testimony. Proof sufficient to sustain the commission's findings need not be of a character necessary to satisfy a scientific medical test. Conway v. Swift & Co. 175 Minn. 42, 219 N. W. 944. All the testimony must be considered, and when that is done and there is still room for reasonable

[2]Kiley v. Sward-Kemp Drug Co. 214 Minn. 548, 9 N. W. (2d) 237; Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 18 N. W. (2d) 121; 6 Dunnell, Dig. & Supp. § 10426.

minds to come to different conclusions, a case is presented where a court of review cannot disturb the findings of the trier of fact. Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419.

■ Certain assignments of error, with particular reference to the commission's affirmation of the referee's findings and allowance of medical expenses and with respect to certain modifications thereof by the commission, are not supported by any argument or authorities. We decline to consider them. An assignment of error is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection, where the assignment is based on mere assertion and is not supported by argument or authorities. Greear v. Paust, 192 Minn. 287, 256 N. W. 190; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327; 1 Dunnell, Dig. & Supp. § 366. We note, however, that the commission is not bound or controlled by the findings of fact made by the referee. Hogan v. Twin City A. T. Estate, 155 Minn. 199, 193 N. W. 122; Olson v. Carlton, 178 Minn. 34, 225 N. W. 921.

It is obviously unnecessary to consider whether any liability of the 1942 insurer is barred by the two-year statute of limitations (M. S. A. 176.18).

The writ of certiorari is discharged and the decision of the commission is affirmed, with an allowance to employe of $250 attorney's fees and costs in this court.

Writ discharged and order affirmed.