ADAM J. CAPUTA v. LAND O' LAKES CREAMERIES, INC.,
AND ANOTHER.
JULIUS SCHMAHL, STATE TREASURER, AS CUSTODIAN
OF SPECIAL COMPENSATION FUND.[1]

July 13, 1951.

No. 35,490.

C. E. Warner, Ralph Foster, and W. E. Sandeen, for relator.

C. A. Stark, for respondent employer and its insurer.

J. A. A. Burnquist, Attorney General, and Victor H. Gran, Assistant Attorney General, for respondent Julius Schmahl.

CHRISTIANSON, JUSTICE.

Certiorari to review an order of the industrial commission affirming the findings of a referee denying Adam J. Caputa workmen's compensation. The commission found that the injury complained of, a bilateral inguinal hernia, was not caused by an accident arising out of and in the course of employe's employment. The sole issue here is whether there is evidence to support that finding.

As part of his duties as an operating engineer, employe was required to tend the oil-fired boilers located on his employer's prem-

---

[1]Reported in 48 N. W. (2d) 895.

ises. There were three boilers, but only one was in operation at any given time. The accident is alleged to have occurred about 5 a. m. one morning on or about February 2, 1949, while employe was engaged in releasing the excess steam from the boiler then in operation. In order to pull the lever which releases the boiler blow-off valve, employe had seated himself upon a cement step near the boiler, braced his feet, and pulled the lever toward himself. He testified that at this time he felt sharp pains in the left and right sides of his groin, and contends that the act of pulling the lever resulted in the strain which caused his double hernia. The lever on the boiler involved was from 14 to 16 inches long and required approximately 65 pounds of pull to move it. Employe was working alone at the time, and there were no eyewitnesses.

Although he examined himself later that day, employe noticed no marks or signs of bleeding, nor did he vomit. It was not until a week later while home in bed that he first noticed lumps in his groin. At no time did he report to employer's first-aid station located on the same floor as the boilers, and without complaining to anyone he continued to perform his regular duties, including blowing off the boilers, until February 27, 1949, when he was laid off for causing damage to one of the boilers by failing to maintain the proper water level in it. The same boiler involved in the alleged accident remained in continuous operation until February 23, 1949. Employe testified that he had made attempts to see his foreman on four different occasions for the purpose of reporting the accident. However, it was only after he was laid off on February 27, 1949, that he asserted for the first time to anyone that he had sustained an accident on February 2, 1949. He was retired on pension when he reached retirement age of 65 in April 1949.

Beginning in October 1948, employe had been under the care of his personal physician, Dr. J. S. Blumenthal, for a serious heart condition. From the time he began treating him, Dr. Blumenthal, a specialist in the field of internal medicine, had advised employe not to work because of his condition, which consisted of a greatly enlarged heart accompanied by ascites—a large amount of fluid in

the abdominal cavity. Although employe was treated for his heart condition on February 22, 1949, 20 days after the alleged accident, he said nothing to Dr. Blumenthal about the hernias or the accident.

The medical testimony disagreed concerning whether the act of pulling the lever in the manner described by employe was the responsible cause of the hernias which manifested themselves to him a week later. Dr. Harvey Nelson testified in behalf of employe, and, in answer to a hypothetical question which assumed the truth and accuracy of employe's testimony, stated that it was his opinion that the effort expended in pulling on the lever aggravated the development of the bilateral hernia. Dr. Carl O. Rice and Dr. John M. Feeney disagreed with that opinion. They acknowledged that when one's body is off balance, or out of balance, the protective function of the abdominal muscles may be temporarily arrested, and that excessive physical strain under such circumstances might result in the intra-abdominal pressure which is responsible for the development of hernia where the condition of the abdominal wall and inguinal ring are favorable to such development. However, in their opinion, the events of February 2, 1949, described by employe did not fall within that category of activities so as to be identified as the responsible cause of the hernias which appeared about a week later. They indicate that intra-abdominal pressure may result from several different and normally unrelated causative factors, and that, in their opinion, the logical and more obvious explanation for the hernia-causing intra-abdominal pressure was the downward pressure within or upon the abdomen of the great excess of fluid present, which was due to employe's heart condition.

In determining whether the facts and the reasonable inferences to be drawn therefrom sustain the findings of the industrial commission, the evidence must be viewed in the light most favorable to such findings. Schmoll v. J. W. Craig Co. 228 Minn. 429, 37 N. W. (2d) 539. The findings of the commission on questions of fact will not be disturbed unless a consideration of the evidence and the permissible inferences require reasonable minds to adopt contrary conclusions. Liakos v. Yellow Taxi Co. 225 Minn. 34, 29 N. W.

(2d) 481; Kundiger v. Waldorf Paper Products Co. 218 Minn. 168, 15 N. W. (2d) 486. Moreover, where the evidence of causal connection of the hernia and the alleged accident is in conflict, the conclusion of the industrial commission based on competent evidence must be sustained. Schwendig v. Anderson & Hedwall Co. 207 Minn. 14, 289 N. W. 772.

Here, the sole question presented and decided by the commission was a fact question. The burden of proving his case rested upon employe. Tillman v. Stanley Iron Works, 222 Minn. 421, 425, 24 N. W. (2d) 903, 905, and cases cited. Since the decision of the industrial commission is adequately sustained by the evidence, the finding and order here for review must be affirmed.

Writ discharged and order affirmed.