## LLOYD H. SCHUPPEL v. UNITED VAN BUS COMPANY AND ANOTHER.

102 N. W. (2d) 24.

March 18, 1960—No. 37,876.

*Thomas O. Kachelmacher, Louis Bialick,* and *Gerald B. Forrette,* for relator.

*Lawrence Hazen, Phillip J. Klein,* and *Hansen, Hazen & Lynch,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review a decision of the Industrial Commission which determined that relator was not entitled to compensation for loss of wages due to disability arising out of his employment. The commission found that on November 5, 1957, and November 17, 1957, relator had sustained a personal injury arising out of and in the course of his employment for which he was entitled to compensation for medical

expenditures, but held that any disability suffered by him was not related to injuries arising out of his employment.

The record discloses that in 1954 relator, then 60 years of age, while working for Currie Transfer & Storage Company, first suffered pains in his chest. He consulted Dr. John P. Korchik who referred him to a specialist for an electrocardiogram examination. The specialist's report stated that relator had damaged his right heart and had coronary insufficiency. Dr. Korchik advised relator to lighten his work and prescribed theominal tablets and nitroglycerine pills, the former to increase relator's blood circulation and the latter to provide relief from any chest pains he might suffer.

For several years thereafter relator worked at the same employment, which for the most part consisted of handling freight in the warehouse of his employer. During this period he did not receive any additional medical treatment but continued to take the theominal tablets daily. He also found it necessary to relieve his chest pains by taking the nitroglycerine pills about once a month.

In November 1957 relator commenced employment with United Van Bus Company which had succeeded Currie Transfer & Storage Company. He continued in the same type of work which he had been doing for his former employer. On November 4, 1957, he was ordered to work a 14-hour shift unloading freight while previously he had always worked an 8-hour shift. Relator began to work about 10:40 p. m. November 4, and about 4 a. m. November 5 he felt a sharp pain in his chest and thereupon took a nitroglycerine pill. Thereafter he continued to work until 12:40 p. m., finishing his shift, and thereupon returned to his home. He testified that as he finished work that day he was tired but otherwise normal.

On the following day relator resumed employment and continued working until November 17, 1957. On that day his work commenced at 6 p. m. and required some unusual exertion in that he was required to push a four-wheel truck up an incline into a trailer, whereas prior to that time he had worked with lighter two-wheel trucks.

At about 11 p. m., while thus working, he again felt severe pains in his chest and again took a nitroglycerine pill. He continued to work

his full shift on this date and thereafter remained in his regular employment until December 13, 1957. During these last weeks, however, he found that his chest pains were becoming more frequent and again consulted his doctor. An electrocardiogram was taken December 16, 1957, and his doctor advised that because of changes in his physical condition he should cease working. At that time relator discontinued work for employer.

It is relator's contention that the heavier work required of him on November 4, 1957, and November 17, 1957, aggravated a preexisting heart condition and resulted in disability to the extent that he is presently unable to work. It is respondents' contention that any aggravation suffered on the dates described was of a temporary nature and that his present disability is the result of the normal progression of his coronary disease and would be present regardless of his exertion on November 5 and November 17, 1957.

At the hearing before the Industrial Commission, the testimony of three medical experts was received. Dr. John P. Korchik and Dr. David V. Sharp testified in behalf of relator and Dr. Moses Barron testified in support of respondent. In substance Drs. Korchik and Sharp testified that relator's disability was the result of a heart ailment which was definitely aggravated by his work on November 5 and November 17, 1957, which has been described. Dr. Sharp felt that relator would be capable of lighter work than he had been doing, while Dr. Korchik felt that relator was totally and permanently disabled. They diagnosed his illness as arteriosclerotic heart disease with heart damage. Both conceded that arteriosclerosis is a progressive disease and that as the disease progresses in the usual course there is an increasing coronary insufficiency which results in less tolerance for exertion; that overwork of the kind described could precipitate more frequent and more intensive attacks. Based upon the report of the electrocardiogram of December 16, 1957, Dr. Korchik expressed the conclusion that there had been damage to relator's heart which involved the anterolateral wall of the left ventricle.

Upon cross-examination Dr. Korchik conceded that the report on the electrocardiogram made on December 16, 1957, stating that there were

"no signs to suggest that these changes are acute" meant that the heart changes were not serious; that it would be fair to say that there was nothing in the electrocardiogram report which revealed that any acute episode had occurred within recent months; and that from information possessed he could not say whether there had been a clotting and necrosis of relator's tissues or whether relator had experienced a coronary thrombosis on November 17.

Upon cross-examination Dr. Sharp admitted that he could not ascertain any change in relator's heart in terms of mechanical obstruction; Dr. Sharp had testified earlier that he did not believe that relator had ever experienced a coronary thrombosis. He gave his opinion that the progressive arteriosclerosis suffered by relator was the cause of the incapacity of his heart to sustain exertions without repeated cramps and he said also that he could not assume, and therefore did not know, that after the 14-hour shift described there was any objective change in relator's heart. He testified that in his opinion relator was capable of doing light work compatible with his coronary insufficiency.

Dr. Barron testified that in his opinion relator, as a result of coronary insufficiency, suffered frequent attacks; that the electrocardiograms indicated that relator's condition was not unusual or abnormal in coronary diseases but was simply an expression of progressive changes in the blood vessels ordinarily accompanying this disease; that he found no evidence of coronary thrombosis; that the attacks which relator described were characteristic of coronary disease; that there was no evidence of direct injury to the heart in the sense of organic changes. He testified further that any injury to the heart muscle was a result of the narrowing of the blood vessels rather than because of a sudden plugging of a blood vessel which might follow severe exertion; that in his opinion the attacks which relator sustained November 5 and November 17, 1957, did not produce any structural changes in the heart or hasten or aggravate the coronary sclerosis which would progress the same whether a patient remained in bed or was active or hurrying; that in relator's case by November 4, 1957, the disease had progressed to where it would no longer tolerate the work relator had been doing; that if a heart with coronary disease is exerted it will result in more

frequent attacks of pain, but that such exertions will not aggravate or hasten the progress of the disease.

Based upon such conflicting testimony, the commission found that on November 5, 1957, and November 17, 1957, relator had sustained personal injuries arising out of and in the course of his employment, for which he was entitled to the value of the medical services required to cure and relieve him from such injuries; but that the personal injuries sustained on November 5 and November 17, 1957, did not permanently aggravate his preexisting condition and that his present disability was not related to the personal injuries.

■ As we have previously stated, our function in cases of this kind is to determine whether the evidence is sufficient to sustain the findings of the commission. 21 Dunnell, Dig. (3 ed.) § 10426. Here, we must ascertain whether the commission's finding that relator's present disability was not related to an injury arising out of or in the course of his employment finds support in the testimony submitted. Caputa v. Land O' Lakes Creameries, Inc. 234 Minn. 514, 48 N. W. (2d) 895; Jurich v. Cleveland-Cliffs Iron Co. 233 Minn. 108, 46 N. W. (2d) 237; Schmoll v. J. W. Craig Co. 228 Minn. 429, 37 N. W. (2d) 539.

■ Examination of the record, including the conflicting medical testimony, compels the conclusion that the evidence is sufficient to sustain the finding of the commission on the issue above defined. Based upon an adequate foundation, Dr. Barron expressed the opinion that relator's disability was due to the ordinary and usual progress of a coronary disease of the type described, which would have disabled relator to the extent that he is now disabled regardless of his exertions on November 5, 1957, and November 17, 1957. His testimony that there was no evidence of a coronary thrombosis or a plugging of the arteries was corroborated by Dr. Sharp and not disputed by Dr. Korchik.

In substance we gather from his testimony that relator's exertions gave rise to chest pains which required medical attention, but that after they had subsided his condition was just as it would have been regardless of the exertions. The commission, after hearing all the testimony of the medical experts, based its findings principally on that

submitted by Dr. Barron. This was entirely within its province, and, since the record reveals nothing to discredit his testimony, we have no choice but to affirm the findings based thereon, particularly where it was in many ways corroborated by the medical experts submitted by relator. This situation brings the case in line with numerous decisions of this court in which we have upheld the commission's findings when medical testimony was in conflict. As stated in Coy v. Casanova Bar, Inc. 225 Minn. 191, 192, 30 N. W. (2d) 33:

"The position of relator is that the facts show without contradiction that he suffered an aggravation of an existing heart condition. The medical testimony is undisputed that Coy was suffering from a heart condition at the time of the accident and that he has so suffered since it occurred. Two physicians, neither of whom was a heart specialist, testified in favor of relator. They agreed that there was a heart condition prior to the accident, and they gave their opinion that this condition was aggravated thereby. One heart specialist testified for respondents that Coy had a heart condition at the time of the accident, but that it was a type of disease which became intensified as time went on, and that the fall which relator suffered did not cause aggravation of the heart condition, which, in his opinion, had become worse since the accident by its own increased intensity. He gave convincing reasons in support of his opinion, and his views were supported by one other physician. Therefore, whether relator suffered an aggravation of the heart condition from the accident was a question of fact for the industrial commission to determine. Its decision is sustained by the evidence."

See, also, Schmillen v. Dave Schroeder Grocery, 250 Minn. 561, 85 N. W. (2d) 740; Casey v. Northern States Power Co. 247 Minn. 295, 77 N. W. (2d) 67; Stephen v. Miles Const. Co. 240 Minn. 307, 60 N. W. (2d) 801.

Affirmed.