### EARL ULVE v. BEMIDJI COOPERATIVE CREAMERY ASSOCIATION AND OTHERS.

127 N. W. (2d) 147.

March 13, 1964—No. 38,943.

*M. A. Reed,* for relator.

*McLeod & Gilmore,* for creamery association and its insurer.

*R. A. Woychik,* Compensation Attorney, for the state.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review a decision of the Industrial Commission wherein it determined that relator, Earl Ulve, had been unable to work only from May 18, 1960, until August 7, 1960, due to an occupational disease—allergic dermatitis—contracted while he was in the employ of the State of Minnesota, Department of Conservation, Division of Game and Fish; and which limited his compensation to the sum of $457.85 and medical expenses.

It is relator's contention that he contracted the disease on May 25, 1958, while in the employ of respondent Bemidji Cooperative Cream-

ery Association, referred to herein as the creamery association; that it was reactivated or aggravated during his employment with the State of Minnesota; and that his disability therefrom has been continuous from May 25, 1958, until the present time. It is his further contention that under Minn. St. 176.66, subds. 1[1] and 2,[2] his right to compensation in whole or in part has continued up to the present because it has been impossible for him to resume his former occupation or to earn wages in some other occupation which is not unhealthful or injurious to him.

The findings of the referee, affirmed by the commission, include the following:

"That the employe does not require further medical care to cure or relieve from the effects of said occupational disease of May 25, 1958.

"That as a result of said occupational disease of May 18, 1960, the employe was temporarily totally disabled on that date and so remained disabled to August 7, 1960, a period of 11 weeks and 3 days.

\* \* \* \* \*

"That the employe does not require further medical care to cure or

---

[1]Minn. St. 176.66, subd. 1, provides: "The disablement of an employee resulting from an occupational disease, except where specifically otherwise provided, is to be treated as the happening of an accident within the meaning of the workmen's compensation law and the procedure and practice provided applies to all proceedings under this section, except where specifically otherwise provided herein. When used in this section, 'disability' means the state of being disabled from earning full wages at the work at which the employee was last employed and 'disablement' means the act of becoming so disabled."

[2]Minn. St. 176.66, subd. 2, provides: "If an employee is disabled or dies and his disability or death is caused by a compensable occupational disease, he or his dependents are entitled to compensation for his death or for the duration of his disability according to the provisions of this chapter, except as otherwise provided in this chapter. If it be determined that such employee is able to earn wages at another occupation which is not unhealthful or injurious and such wages do not equal his full wages prior to the date of his disablement, the compensation payable is to be 66 2/3 per cent of the difference between the daily wage of the workman at the time of disablement and the daily wage he is able to earn in his partially disabled condition, as provided by section 176.101, subdivision 2."

relieve from the effects of said occupational disease of May 18, 1960.

"That the employe was again temporarily totally disabled by allergic dermatitis from August 16, 1960 to September 1, 1960, and after September 12, 1960, the period of which latter disability is not accurately disclosed by the record.

"That said total disability on and after August 16, 1960 was by reason of causes not herein pleaded."

In its opinion the commission stated:

"The employe has had considerable medical treatment—which cleared the condition after each 'flare up.'

"The Referee determined that the employe had recovered from the dermatitis suffered while employed at the Creamery, and that there is no liability for the subsequent periods of disability and medical care flowing out of that exposure. The Referee also determined that the state employment resulted only in 11 weeks and 3 days of temporary disability, and that the employe's later disability was not the result of the exposure during the employment with either the creamery or the state.

\* \* \* \* \*

"\* \* \* the disability for which compensation is claimed must be related to the employment. Here the Referee has determined that the employe had recovered and that the disability after the time herein involved is attributed to new and other causes. We believe the Referee's determination is supported by the evidence and the weight of medical opinion.

\* \* \* \* \*

"The Referee concluded that the employe failed to establish by a fair preponderance of the evidence that the exposures in the two employments here involved contributed significantly to the disability after August 7, 1960. The more reasonable inference is that the employe has an inherent sensitivity, and that each outbreak of dermatitis is an independent one, unrelated to previous exposures."

The record establishes that at the time of the hearing relator was 44 years of age and married; that his education terminated after one

year in high school; that from 1942 until 1945 he had been employed by Minneapolis-Honeywell Inc. as a paint sprayer; that he had been in the armed services from 1945 to 1947 and after his discharge therefrom he had returned to Minneapolis-Honeywell Inc. and worked for it during 1947; that from 1948 to July 1950 he had been engaged in general farm work; that in July 1950 he had been employed by the Bemidji Cooperative Store at Bemidji for about 6 weeks; that in 1951 he had contracted dermatitis on his hands caused by feed dust, middlings, bone meal, cow dander, bark dust, and hay dust with which he came in contact; that in October 1952 he had commenced employment with respondent creamery association; that ultimately he had been employed in its packaging room filling paper cartons with fluid milk; that in this work he had been required to handle cartons made of cardboard with red ink printing on the exterior and also had come in contact with dust from the trimmings off the edge of such cardboard; and that after he had been engaged in this work for about 4½ years on May 25, 1958, he had again broken out with dermatitis.

Relator testified that he had been unable to work from that date until June 2, 1958, when he had resumed his former employment; that on July 15, 1958, he had again broken out with dermatitis and had then engaged the services of Dr. Jason K. Hartjen, M. D., who had referred him to Veterans Hospital in Minneapolis where he had been hospitalized; that he had then been referred to Dr. Elmer M. Rusten, a dermatologist who had continued to treat him until January 1960, at which time he had been released, although still required to use ointments and medication. He testified further that from January 1960 until May 16, 1960, he had been unable to find employment, but that on the latter date he had commenced work for the Conservation Department of the State of Minnesota; that he had worked for this employer for approximately 2 days when he had again broken out with dermatitis while cutting brush and dragging it to a roadway; that in this employment he had come in contact with numerous types of weeds; that at that time he had again resumed treatment with Dr. Rusten and had not worked again until August 1960; that at that time his condition appeared to have cleared up and he had obtained a job

with Mary Independent School District in Hubbard County scraping woodwork and repainting trim on windows and woodwork on the outside of the school building; that he had engaged in this work for approximately 5½ days until the job was completed; that on the following day he had again broken out with dermatitis for which he was treated by Dr. Hartjen who had referred him to Dr. Ernest L. Grinnell, a dermatologist in Grand Forks, North Dakota, in September 1960; that subsequent to September 5, 1960, he had no employment beyond casual labor for a few neighbors after which he had again broken out with dermatitis; and that as late as January 22, 1961, while at home, he had again broken out with the disease.

Dr. Hartjen, who had originally attended relator and referred him to Dr. Rusten, testified that in his opinion there was a causal relationship between the dermatitis contracted by relator while in the employ of the creamery association and his present disability. He qualified this opinion by stating that:

"* * * I do not pretend to be an expert in dermatology * * *. Furthermore, my own limitations with respect to the treatment of this case are well indicated by my referrals. * * * In my limited medical experience with dermatological problems * * * my * * * answer is based in part on a medical opinion, but also in part on the opinion of logic."

He acknowledged that relator was presently able to perform many types of work including that of bookkeeper, sales clerk, watchman, highway patrolman, elevator operator, or flagman provided he was not required to come in contact with materials to which he was allergic.

Dr. Grinnell testified that in his opinion there was a causal relationship between relator's employment by the creamery association and his present disability. He testified that—

"* * * people once sensitized, whose skin has once become inflamed for some reason or another, some of these people when they have come in contact with something that irritates the skin retain a peculiar sensitivity of the skin for months, even years, so that they will frequently break out from other contacts * * *.

* * * * *

"* * * the [relator's] skin has never regained its complete normalcy. * * * he becomes irritated by a lot of different things now that he wouldn't be, perhaps, if he had never had trouble in the first place. * * * That is merely conjecture. We don't know for sure that that is true, but certainly the odds seem to favor it.

* * * * *

"* * * if his skin could remain clear long enough, over a period of maybe a year or two years without any episodes of breaking down, then I think he would be all right."

Dr. Grinnell also admitted that there were many types of work relator could presently perform including that of bookkeeper, elevator operator, watchman, flagman, sales clerk, and working on marble or mineral material.

Dr. Rusten testified that he had originally treated relator for the condition which followed his employment with the creamery association; that in March 1960 relator's condition was nearly or completely involuted (cured); that there only remained some puritis in the ear canals, which did not imply the presence of an eruption but was merely a subjective symptom; that relator's dermatitis found on May 8, 1960, following his employment by the state, was a new occurrence rather than a recurrence of the old condition; that it was a distinct eruption caused by some new substances with which relator had come in contact, probably a weed resin; that on July 20, 1960, "the hands were much improved and that the neck and face and eruption had involuted, disappeared." He was asked whether the previous eruptions would make it more likely that a subsequent one would develop on exposure to substances for which there is an allergy, and replied, "When the other sensitivities arise, then you can state, if you can prove them, he has more than one sensitivity." He expressed the opinion that relator could return to work and probably to the type of creamery work which he had been doing because it was unknown whether the same factors which caused his previous dermatitis while employed there would still be present.

In its opinion, the commission stated:

"We believe the more reasonable and persuasive testimony is that of Dr. Rusten."

The record disclosed that relator was paid compensation by the insurer of the creamery association covering his disability from May 28, 1958, to June 2, 1958, and from July 15, 1958, to January 12, 1960. In the present proceedings he was awarded compensation from the State of Minnesota covering the period from May 18, 1960, to August 7, 1960.

■ Our function is to determine whether the evidence is sufficient to sustain the commission's determination that relator's disability subsequent to January 1960, except for the period for which compensation was awarded, had no causal relationship to an occupational disease contracted by him while in the employ of either of the respondents. Jensvold v. Kunz Oil Co. 190 Minn. 41, 250 N. W. 815; Korthuis v. Soderling & Sons, 218 Minn. 342, 16 N. W. (2d) 285; Fisher v. Fisher, 226 Minn. 171, 32 N. W. (2d) 424. The burden of proving such a causal relationship of course rested upon relator. Kvernstoen v. Nelson, 212 Minn. 102, 2 N. W. (2d) 560; Adler v. Interstate Power Co. 180 Minn. 192, 230 N. W. 486; Liakos v. Yellow Taxi Co. 225 Minn. 34, 29 N. W. (2d) 481. In determining this question the Industrial Commission must weigh and decide the credence to be given the opinions of the various medical experts whose testimony is submitted. Richter v. Shoppe Plumbing & Heating Co. 257 Minn. 108, 100 N. W. (2d) 96. Also it is clear that in making this determination the commission is not bound to accept the opinion of any certain medical expert, Richter v. Shoppe Plumbing & Heating Co. *supra;* Schmoll v. J. W. Craig Co. 228 Minn. 429, 37 N. W. (2d) 539; Casey v. Northern States Power Co. 247 Minn. 295, 77 N. W. (2d) 67, and in addition may give consideration to the surrounding facts and circumstances. Jurich v. Cleveland-Cliffs Iron Co. 233 Minn. 108, 46 N. W. (2d) 237; Corcoran v. P. G. Corcoran Co. Inc. 245 Minn. 258, 71 N. W. (2d) 787.

■ Here substantial evidence was submitted to support the commission's finding that relator's disability subsequent to August 7, 1960, had no relationship to his employment by either the creamery associa-

tion or the state, but rather was due to an inherent sensitivity. Dr. Rusten, an expert in the field of dermatology who had treated him for many years after his employment by the creamery association, gave positive testimony to this effect, while medical opinions to the contrary were qualified to a large extent. Further, there was undisputed testimony that prior to his employment by the creamery association relator had suffered dermatitis from such substances as feed dust, bark dust, hay dust, and middlings. When all such evidence is considered it is clear that the commission's finding that any disability of relator subsequent to August 7, 1960, was not causally related to his previous employment but rather was due to an inherent sensitivity or a cause unrelated to his "previous exposures" is more than adequately supported.

It is relator's contention that under Minn. St. 176.66, subds. 1 and 2, above set forth, his right to compensation did not terminate upon a showing that he was able to perform work of some kind, but continued until it was established that he was able to earn full wages at his previous employment or in work similar thereto; and that if his present disability has the effect of requiring him to work in some other employment at a reduced wage this would authorize compensation based upon a percentage of the difference between this and his former wages. However, under the compensation statutes, before compensation may be awarded there must be established a causal relationship between the disease resulting in the disability and the employment involved; and it is incumbent upon the employee seeking compensation in such cases to show that such a causal relationship does exist. Anderson v. City of Minneapolis, 258 Minn. 221, 103 N. W. (2d) 397; Kress v. Minneapolis-Moline Co. 258 Minn. 1, 102 N. W. (2d) 497; Gray v. City of St. Paul, 250 Minn. 220, 84 N. W. (2d) 606. Section 176.66, subd. 1, specifically conditions the right to an award for such disability upon "[t]he disablement of an employee resulting from an occupational disease"; and where there is no causal relationship between the two, compensation of course would not be payable. Whether such a causal relationship exists is a question to be determined by the commission, and where there is evidence to sustain its

finding thereon, this court must affirm. Anderson v. City of Minneapolis, *supra*. Here as indicated above the commission determined that relator's disability subsequent to August 7, 1960, was due to an inherent sensitivity and not to his employment by either of the respondents. Likewise, it determined that he had recovered from any disability contracted while in his former employment and was able to resume work in numerous occupations in which the wages no doubt would be comparable to those which he had previously earned. Since there is substantial evidence to support such findings, we have no choice but to affirm them.

Affirmed.