Rodney J. WIRTJES, deceased, by
Theresa GREENFIELD, surviving
spouse, Respondent,

v.

INTERSTATE POWER CO. and Liberty
Mutual Insurance Co., Relators.

No. C6–91–662.

Supreme Court of Minnesota.

Feb. 7, 1992.

Ronald Frank Meuser, Jr., Arndt & Benton, P.A., Minneapolis, for relators.

Thomas D. Mottaz, Anoka, for respondent.

COYNE, Justice.

This workers' compensation matter is before the court by certiorari on the relation of employer Interstate Power Company and its insurer Liberty Mutual Insurance Company to review a decision of the Workers' Compensation Court of Appeals affirming an award of retraining benefits to sur-

viving spouse Theresa Greenfield pursuant to Minn.Stat. § 176.102, subd. 1a. The retraining plan in question contemplates completion of postgraduate studies leading to a master of arts in urban planning with dual emphasis in environmental studies. We reverse.

Rodney Wirtjes' death on June 3, 1988 arose out of and in the course of his employment by Interstate Power Company. He was survived by his wife, Theresa Greenfield, and two children, a boy about one year old when Wirtjes died and a second son who was born five months after Wirtjes' death.

Greenfield, who was 24 years old at the time of her husband's death, has lived most of her life in south central Minnesota. At the time of her marriage Greenfield was a student at Mankato State University majoring in interior design and decorating. Her employment history begins in high school and ends with her marriage in December 1985. During that time Greenfield worked at various unskilled, entry-level jobs of the kind typically held by students. Although her marriage signalled the end of her employment and attempts to find employment outside the home, Greenfield completed her studies at Mankato State, and in 1987 she was awarded a bachelor of arts degree in design and human environment. After graduation Greenfield did not attempt to pursue a career in the area of her degree either because she was pregnant or because she had lost interest in interior design.

Since Wirtjes' death Greenfield and her two children have been receiving dependency benefits pursuant to Minn.Stat. § 176.-111, subd. 21 (1988), based on Wirtjes' average weekly wage of $611.30. The maximum combined workers' compensation benefits and social security benefits payable pursuant to section 176.111, subd. 21, which Greenfield and her children apparently receive, are sufficient to cover monthly household expenses equal to those expended during Wirtjes' lifetime. An increase to $3,300 monthly household expenses during the five months immediately preceding the compensation hearing is attributable primarily to costs associated with Greenfield's enrollment in post-graduate studies at Mankato State University, including custodial day care for the children. Until the spring of 1990 Greenfield had continued as a full time homemaker whose priority was to stay at home in Blue Earth to rear her children.

■ Early in 1990 Greenfield sought approval of a retraining plan for employment which would require Greenfield to earn a master of arts degree offered by Mankato State University in urban planning with dual emphasis in environmental studies. Following an administrative conference pursuant to Minn.Stat. § 176.106 (1988), at which the parties stipulated that the employer would provide placement services to Greenfield when she was ready and willing to accept employment, a rehabilitation and medical specialist denied approval of the rehabilitation plan presented by Greenfield and her qualified rehabilitation consultant. The stated rationale for the specialist's decision was that while Greenfield is not presently interested in employment, she has no physical disability and is better educated and more intelligent than the average worker and, therefore, is either already capable of being self-supporting or could be capable of being self-supporting after a few years of full-time employment.

Greenfield requested a de novo hearing before a compensation judge. The compensation judge ordered the decedent's employer to provide retraining in the surviving spouse's chosen field by participation in the master's degree program offered by Mankato State University. The workers' compensation court of appeals affirmed.

■ Certainly, there is evidentiary support for the compensation judge's findings of fact. Greenfield has not worked outside the home since her marriage and has not made use of her bachelor's degree. Undoubtedly, she has lost interest in her undergraduate field of study and does not intend to pursue a career in interior decorating. Moreover, her new field of interest—urban planning—appears to be a not inappropriate career goal in light of Greenfield's interest, aptitude, and apparent academic ability. But entitlement to rehabilitation assistance pursuant to Minn.Stat.

§ 176.102, subd. 1a, is a mixed question of law and fact, and Greenfield's disinterest in working in the occupation for which she has been trained and her desire to enter upon a career in an unrelated field in which she has neither experience nor training does not necessarily justify imposing on her deceased husband's employer the obligation to finance her participation in a program leading to a master's degree in urban planning. The statute speaks of entitlement to rehabilitation services in terms of the dependent surviving spouse's "need of rehabilitation assistance to become self-supporting," but neither "need" nor "self-supporting" are further explicated. Minn. Stat. § 176.102, subd. 1a. It appears that Greenfield's Q.R.C., the compensation judge, and the WCCA have assumed that both "need of rehabilitation assistance" and "self-supporting" relate to the deceased employee's earnings—that a surviving spouse is in need of retraining if training is necessary in order to place the surviving spouse in position to replicate the earnings of the decedent; and that the rehabilitation goal for a surviving spouse is the same as for an injured worker: i.e., to produce an income as close as possible to the deceased employee's pre-injury level of income.

It seems to us, however, that it is the individual talents, skills, experience, earning capacity, and employability of the surviving spouse—not those of the deceased employee—that determine whether the surviving spouse is in need of rehabilitation assistance and, if so, the kind of rehabilitation services required. Neither should "self-supporting" be equated with the decedent's wages. Rehabilitation of a disabled employee is directed toward returning that employee to his or her established pre-injury employment status and to discontinuing workers' compensation benefits. A dependent surviving spouse, on the other hand, has not been disabled by a work-related injury, although circumstances unrelated to employment may have affected his or her earning capacity and employability, and workers' compensation benefits continue unaffected by the employment of the surviving spouse. Workers' compensation is payable as long as there is a dependent child under 18 years of age or a child under the age of 25 years who is a full-time student and, when the last child is no longer dependent, to the dependent surviving spouse for a period of 10 years regardless of the amount earned by the surviving spouse.

Here the younger of the employee's two children was born after his father's death so that Greenfield can expect to receive compensation at least until the younger child attains the age of 18 years and, as long as he continues to be a full-time student, until he becomes 25 years old and then for a further period of 10 years, whether or not she remarries and regardless of her earnings or income from other resources, such as life insurance proceeds of which she was the beneficiary.

■ Certainly, we do not suggest that the availability of outside resources, which might more properly be preserved for the children's education or the spouse's retirement, should govern a dependent surviving spouse's entitlement to rehabilitation assistance. At the same time, to disregard the availability of compensation benefits payable over more than 25 years in determining what rehabilitation assistance, if any, is necessary to make the surviving spouse self-supporting when compensation is no longer payable represents a departure from the aims and purposes of the workers' compensation act. Greenfield is young and intelligent and employable; her training is current, not obsolete, and in a marketable field, and even if she declines to work in the field in which she is trained, she enters the labor market armed with a bachelor's degree. We are confident that with a few years' experience and long before the cessation of compensation payments, Greenfield will be capable of being fully self-supporting if she is not now, and although she may need placement assistance, she has not demonstrated need for retraining of the kind described in her proposed rehabilitation plan.

Reversed.