Randall C. WILSON, Relator,

v.

**CROWN CORK & SEAL and Cigna Insurance Company, Respondents.**

No. C9-93-384.

Supreme Court of Minnesota.

July 16, 1993.

Rehearing Denied Aug. 24, 1993.

David K. Furness, Owatonna, for relator.

Kathy A. Endres, David A. Schooler, Minneapolis, for respondents.

KEITH, Chief Justice.

We review on certiorari a decision of the Workers' Compensation Court of Appeals affirming the compensation judge's denial of retraining and temporary total benefits. We reverse the denial of retraining benefits and reinstate the commissioner's award. We also reverse the denial of temporary total compensation and remand that issue for reconsideration.

Randall C. Wilson sustained compensable low back injuries on April 29, 1989, and March 8, 1990, while employed by Crown Cork & Seal as a Group II production worker.[1] Following the second injury, Wilson was temporarily totally disabled until June 18, 1990, when he returned to work with restrictions at Crown. On August 13, 1990, Wilson was laid off;[2] shortly thereafter, Crown informed Wilson's qualified rehabilitation consultant that Crown would not be able to provide a permanent position within Wilson's restrictions.

---

1. Crown manufactures aerosol cans and food cans used to package vegetables; and Wilson's job was to operate palletizers. This job entailed taking the product from the assembly line and placing it on a pallet. Wilson also sorted defective cans and chip boards, and he did some cleaning and other manual labor. The parties stipulated Wilson's average weekly wage was $481 on the date of the second injury and that he attained maximum medical improvement (MMI) on November 16, 1991.

2. Although the WCCA indicated the layoff was for seasonal reasons, the record suggests employee's layoff was also disability related.

Wilson then engaged in a search, with rehabilitation assistance, for other employment. In February 1991, he found full-time, light-duty work in a cabinet-making business at a wage significantly less than his preinjury wage. Despite extensive job placement activities that continued through the end of 1991, Wilson was unable to find a better-paying job. Meanwhile, by interim administrative decision, Wilson's QRC received authorization to "explore" retraining and develop a proposal if appropriate. After further evaluation, which included a review of Wilson's interests and aptitudes, educational background, preinjury wage level, disability and a labor market study, Wilson's QRC recommended a retraining plan, for a period not to exceed the statutory maximum of 156 weeks, consisting of college course-work leading to a degree in accounting. On January 2, 1992, the proposal was approved by interim administrative decision; and on January 30, 1992, Crown and its workers' compensation carrier, CIGNA Insurance Company, petitioned for a hearing before a compensation judge.

In February 1992, pursuant to a new company policy pertaining to the employment of injured workers, Crown offered Wilson a modified Group II production worker position. Included in the modifications was an advisory to seek assistance from coworkers with tasks that aggravated his back. Wilson returned to Crown on March 16, 1992;[3] but despite the modifications to his job, Wilson experienced a gradual increase in back pain. On April 23, 1992, Wilson's treating orthopedist recommended he stop working pending further evaluation for possible surgical intervention; he also referred Wilson to an orthopedic surgeon in Stillwater. The orthopedic surgeon, after his examination of Wilson as well as a review of the on-site job analysis of the modified production worker job, indicated Wilson needed a job change rather than surgery.

---

**3.** Because Wilson had been away from Crown for more than a year, by operation of the provisions in the union contract, he had lost his seniority.

**4.** Although the compensation judge made an explicit finding that the "light duty position at

Meanwhile, the dispute over the retraining proposal came on for hearing on April 7, 1992, and June 5, 1992. A claim for temporary total compensation, covering the unemployment between April 23, 1992, through June 5, 1992, was also made a part of the dispute. Relevant evidence included the testimony of Crown's plant manager who, on the second day of hearing, testified that a number of modifications had been made to accommodate Wilson's restrictions between hearing dates and that Crown would make whatever further modifications were necessary. Other relevant evidence included the testimony of Wilson's QRC who felt that retraining was still the most viable option. Crown/CIGNA's vocational expert, however, felt that a 3-month trial period at the modified production worker position was more appropriate; and if that did not work out, a 2-year vocational program would be more "cost effective."

The compensation judge denied the retraining request, concluding—

> given the restrictions which are currently in effect which need clarification and the willingness of this employer to make further modifications, as necessary, based on this employee's restrictions, a suitable job may, in the future, be available. In order for the current job which the employee had prior to his most recent time off from work to be suitable, further modifications need to be made. Before these can be made, medical clarification must be made and the QRC must work with both the employee and the employer, who has expressed a willingness to work out further modification.[4]

The compensation judge also denied the claim for temporary total benefits.

■ On appeal, the WCCA affirmed, concluding the likelihood of reemployment with the employer was the "critical issue." The WCCA explained that "[w]hile there the employer is within the employee's physical restrictions and abilities," when read in conjunction with the memorandum, it appears fairly clear the denial of retraining was based on a finding of an offer to develop appropriate work.

was strong evidence that the light-duty job initially provided to the employee in March 1992 was not physically suitable, the compensation judge could reasonably have concluded that the employer's subsequent efforts, and continuing commitment to modify the job duties to address the employee's difficulties, established a substantial prospect that the employee would be able to perform the light-duty job." *Wilson v. Crown Cork & Seal,* —— Minn.Workers' Comp.Dec. —— (WCCA filed January 25, 1993), slip op. at 5. Certainly the "reasonableness of retraining as compared to returning to work with the employer" is an area of concern in "evaluating an employee's entitlement to retraining," *Poole v. Farmstead Foods,* 42 Minn.Workers' Comp.Dec. 970, 978 (1989), but it is not necessarily dispositive. *Cf. Johnson v. State, Dept. of Veterans Affairs,* 400 N.W.2d 729 (Minn.1987) (injured worker not required to affirmatively exhaust all possibility of reemployment with employer before looking elsewhere for a job).

■ An employee is eligible for rehabilitation services if he/she is, because of the work injury, (1) likely to be precluded from engaging in his/her preinjury position and (2) can reasonably be expected to benefit from rehabilitation services which could significantly reduce or eliminate the decrease in employability. *See Gutz v. Honeywell, Inc.,* 399 N.W.2d 557, 563 n. 4 (Minn.1987); Minn.R. 5220.0100, subp. 22 (1992). "Rehabilitation of a disabled employee is directed toward returning that employee to his or her established preinjury employment status and to discontinuing workers' compensation benefits." *Wirtjes v. Interstate Power Co.,* 479 N.W.2d 713, 715 (Minn.1992). Rehabilitation efforts leading to a job with a "higher economic status than would have occurred without the disability is permitted if it can be demonstrated that this rehabilitation is necessary to increase the likelihood of reemployment. Economic status is to be measured not only by opportunity for immediate income but also by opportunity for future income." Minn.Stat. § 176.102, subd. 1(b) (1992). "Necessary" does not mean "indispensable" rehabilitation, but rather, that

which "will materially assist the employee in restoring his impaired capacity to earn a livelihood." *Norby v. Arctic Enterprises, Inc.,* 305 Minn. 519, 521, 232 N.W.2d 773, 775 (1975); 2 Larson, *The Law of Workmen's Compensation,* § 61.23, at 10–1016–17 (1993).

■ At the 2-day compensation hearing in this case, the dispute centered on the need for retraining, an issue that had previously been resolved in favor of Wilson by the commissioner, pursuant to Minn.Stat. § 176.106, in August of 1991. While conceivably there may be a situation in which a subsequent offer of employment warrants reconsideration of a need for retraining, here there was no tender of employment which Wilson could do, only the offer to furnish such employment at some time in the future, if possible. Furthermore, where Crown had initially informed Wilson it could not accommodate his disability, where Wilson's post-injury earnings were considerably below his preinjury wage level even after extensive job search efforts, where the vocational testimony was that retraining was appropriate in the absence of reemployment with the employer here, and where the offer of reemployment was still rather tenuous on the second day of the compensation hearing nearly a year after retraining had initially been approved, it would seem the retraining claim was hardly premature.

■ As for the propriety of the curriculum selected, an "award of retraining is not automatic, but must be supported by competent evidence." *Norby,* 305 Minn. at 522, 232 N.W.2d at 776. The record in this case contains abundant evidence supporting the commissioner's decision. For example, evidence as to Wilson's intelligence, education and physical condition indicated retraining, either through formal or vocational educational means, was appropriate. Additionally, there was testimony from Wilson's QRC that the 4-year program in accounting was more appropriate than the 2-year program[5] in drafting, an area of

5. The obligation of the employer/insurer is statutorily limited to 156 weeks. Minn.Stat. § 176.-102, subd. 11 (1992).

**476**

little interest to employee, suggested by employer/insurer's vocational expert. In that it seems to us the commissioner's award of retraining benefits was in compliance with the Act, *MacInnes v. Super Valu Stores, Inc.*, 253 N.W.2d 835 (Minn. 1977); *Norby, supra,* and given the inordinate length of time involved in resolving this dispute, in the interests of judicial economy we reverse and reinstate the commissioner's award of retraining benefits. *Cf. Anderson v. Pilot City Health Center,* 307 Minn. 204, 239 N.W.2d 227 (1976).

■ With respect to the claim for temporary total benefits, the WCCA concluded that such benefits were not payable where Wilson had not been offered a job meeting the criteria of Minn.Stat. § 176.101, subd. 3e. However, in *O'Mara v. State, University of Minnesota,* 501 N.W.2d 603, 607 (Minn., 1993), we said that "the worker whose pre-injury employer declines to offer a suitable job when the employee is ready to return to work is no less deserving and no less in need when the injury worsens and the worker can work no longer than an employee whose work-related injury causes a medical inability to continue in a '3e' job." Consequently, we reverse the WCCA's disposition of the temporary total compensation claim and remand for reconsideration. The WCCA, of course, has the option, in its discretion to remand the temporary total compensation dispute to the compensation judge for rehearing. *Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54, 63 (Minn. 1984).

Reversed and remanded.

Employee is awarded $400 in attorney fees.