Tanya L. VARDA, Relator,

v.

NORTHWEST AIRLINES CORP., and
Liberty Mutual Insurance Co.,
Respondents.

No. A04–1707.

Supreme Court of Minnesota.

Feb. 24, 2005.

Thomas R. Longfellow, Stacie R. McBride–Cox, St. Paul, MN, for Relator.

Kathy A. Endres, Susan M. Stepaniak, Aafedt, Forde, Gray & Monson, Minneapolis, MN, for Employer and Insurer–Respondents.

## OPINION

HANSON, Justice.

This workers' compensation matter comes before this court by certiorari upon the relation of employee Tanya L. Varda to review a decision of the Workers' Compensation Court of Appeals (WCCA), reversing the compensation judge's award of retraining benefits under Minn.Stat. § 176.102 (2004). Although the compensation judge awarded benefits based on a 4–year program at the College of St. Scholastica that would lead to a bachelor of arts degree in nursing, the WCCA substituted an award of retraining benefits based on a 2–year program at Hibbing Community College that would lead to an associate in science degree in nursing. Varda asserts that the compensation judge's award was supported by substantial evidence and that it was error for the WCCA to modify it. We affirm the decision of the WCCA.

Tanya Varda is a 30–year–old high school graduate who obtained a 2–year degree in sales and marketing from Range Technical College. She is married and has three children ranging in age from approximately 1 year to 6 years old. She lives in the Chisholm/Hibbing area with her family, and her stated intent is to stay in that area to raise her children.

In March 1996, Varda started working as a reservations specialist at a Northwest Airlines reservations center in Chisholm. The nature of her work required continuous computer keyboarding. For at least 9 months each year, she worked fulltime and earned $12.73 an hour. For no more than 3 months each year, she worked as a substitute supervisor, earning $19.86 an hour.

As a result of her employment, Varda sustained compensable injuries in the nature of bilateral carpal tunnel syndrome with ulnar nerve involvement that culminated in disability as of August 1, 2000. She has permanent work restrictions of no more than 20 minutes of keyboarding per hour, no repetitive use of her hands and wrists and no repetitive extension of her arms. She is limited from lifting 20–25 pounds frequently and 50 pounds occasionally. Because Northwest Airlines was unable to accommodate these work restrictions, Varda's employment was terminated in March 2002.

On February 20, 2003, Varda proposed a retraining plan consisting of 4 years of college coursework at the College of St. Scholastica in Duluth, from September 1, 2003, through May 31, 2007, leading to a bachelor of arts degree in nursing. The estimated cost was $144,388 ($80,828 in tuition, $5,000 in books/supplies, $34,560 in mileage, and $24,000 in custodial daycare).

Varda also considered obtaining a 2–year degree from the Hibbing Community College that would qualify her to seek licensure as a registered nurse (RN). The only formal retraining plan submitted for consideration was the 4–year plan through St. Scholastica, but there was evidence that the estimated cost of the 2–year pro-

gram at Hibbing Community College would be $9,500 ($7,200 in tuition, $1,500 in books/supplies, and $800 in miscellaneous items). Varda decided to seek approval for the 4–year degree.

At the hearing on the retraining dispute, Kandise Garrison, a vocational expert whom Varda retained to assess the proposed retraining plan, testified that a bachelor's degree would qualify Varda for a greater number of positions. She said that a 2–year program trains staff nurses, which represent 60% of the positions available for nurses, whereas a 4–year degree is required for the other 40% of nursing positions. Garrison testified that Varda had some work experience as a manager, and that a 4–year degree is required to secure a manager's position in nursing. Finally, she testified that St. Scholastica placed 100% of its nursing graduates with a typical starting salary of $45,000. Garrison compared this to Varda's earning capacity before her disability, but only with respect to her occasional supervisory work, which would have yielded about $40,000 a year had the work been available for a full year.

Garrison did not explicitly testify that the 2–year degree would be an unsuitable retraining program. She agreed that Varda likely would succeed at completing the Hibbing Community College program and obtaining employment. She stated that the starting wage for an RN with a 2–year degree would be $20.55 an hour.

Garrison did testify that Varda's work restrictions would preclude her from performing some of the nursing jobs for which a 2–year degree is sufficient. She stated that some nursing homes and hospitals require nurses to be able to lift more than 50 pounds, and said "I think she is precluded from that very small number of jobs that would require 60 pounds." She also testified that Varda would be preclud-

ed from nursing jobs that "require people to key in data all day or talk on the phone all day and basically desk jobs or data entry jobs, claim examiner jobs, * * * bill review jobs, * * *." She did not state what percentage of nursing jobs require that activity.

Jan Lowe, the vocational expert for Northwest and its insurer, testified that the 2–year program at Hibbing Community College was more appropriate. She said that her labor market survey showed little difference in terms of hourly earnings "for a 2–year versus a 4–year RN." Lowe said Hibbing Community College offers "a shorter program that would essentially get her to the same end, to an RN job, as would St. Scholastica." In looking at the total retraining plan, Lowe testified that it was "more economically reasonable to do the 2–year versus the 4–year plan, which requires a great deal of travel to and from Duluth without much cost benefit at the end of the program." Lowe noted that a number of health care facilities hired nurses with 2–year degrees who needed work accommodations.

The compensation judge approved Varda's retraining request, finding the 4–year program would "substantially increase her RN employment options"; the 2–year program would permit Varda to "perform the duties of a staff nurse, duties generally more taxing"; and "approximately 40% of all nursing positions are non-staff positions requiring a 4–year BA degree." The compensation judge summarized his conclusions as follows:

In spite of the substantial additional costs to be incurred[,] the Court finds it more reasonable, more appropriate for the employee to pursue the 4–year BA degree through the College of St. Scholastica rather than the 2–year alternative at Hibbing Community College. As indicated in the Findings above, the em-

ployee is faced with a substantial delay if in fact she were to attempt to enter the 2–year program at Hibbing Community College. Further[,] as indicated by Ms. Garrison, testifying on behalf of the employee, in all likelihood [the] 2–year program would require an additional half-year of schooling. Of more significance, however, is that without a BA degree, without the 4–year program[,] the employee is not eligible to become a public health nurse or a school nurse. In addition[,] without that 4–year degree the employee in all likelihood would not be eligible to apply for or hold a supervisory nurse position—a position which generally is less physically taxing than the duties performed by a staff nurse. This is of more than passing importance in light of the employee's rather substantial physical restrictions.

The compensation judge did not specifically address how Varda's restrictions might affect her qualifications for the 60% of nursing jobs that did not require a 4–year degree or determine that the 2–year program would not return Varda to the economic status she would have enjoyed without the disability.

On appeal, the WCCA reversed, concluding that the record as a whole did not support the award. The WCCA explained:

Certainly a 4–year degree may be "better," in terms of the number of employment opportunities, than the proposed 2–year alternative. Some nursing jobs do in fact require a Bachelor's degree, and some other nursing jobs may be inconsistent with the employee's lifting restrictions. However, in this case, the record simply fails to establish that the employee would gain any significant economic advantage by attending the 4–year program sufficient to outweigh the immense additional cost. This is especially true given that it is essentially uncontroverted that the employee will easily be able to obtain physically suitable work, as a[n] RN with a 2–year degree, at a wage comparable to a 4–year RN and at a wage that equals or exceeds her pre-injury wage, and given that there is no evidence that the employee can reasonably expect to obtain work in one of her areas of special interest.

*Varda v. Northwest Airlines Corp.*, No. WC04–132, 2004 WL 2089585, at *6 (Minn. WCCA Aug. 11, 2004) (slip op. at 7). The WCCA concluded:

Because the record as a whole does not support the conclusion that the much more expensive St. Scholastica nursing program is reasonably required to restore the employee's lost earning capacity, we reverse the judge's approval of the employee's proposed retraining plan and substitute approval of the alternative 2–year Hibbing Community College RN program.

*Id.*

 When the WCCA reviews a compensation judge's findings of fact, it will affirm those findings unless they are "clearly erroneous and unsupported by substantial evidence in view of the entire record as submitted." Minn.Stat. § 176.421, subd. 1(3) (2004); *see also Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 61 (Minn.1984). Although the WCCA is required to look at all the evidence, it must give due weight to the compensation judge's opportunity to evaluate the credibility of the witnesses and must uphold findings based on conflicting evidence or evidence from which more than one inference might reasonably be drawn. *Id.* at 59–60.

 But when the WCCA reviews a compensation judge's decision on a question of law, it need give no deference to

conclusions of the compensation judge and reviews those conclusions de novo. *See, e.g., Kubat v. St. Louis County,* 2003 WL 22170729, at *3 (Minn. WCCA Sept. 5, 2003); *Megarry v. Megarry Bros.,* 55 Minn. Workers' Comp. Dec. 276, 279 (WCCA 1996). In *Kubat,* the WCCA reiterated that a question that rests on the application of a statute to essentially undisputed facts is a question of law. *Kubat,* 2003 WL 22170729, at *3. We have said that an employee's entitlement to retraining benefits "is a mixed question of law and fact." *Wirtjes v. Interstate Power Co.,* 479 N.W.2d 713, 715 (Minn.1992). But we also have recognized that the "terminal question" of an analysis of the evidence—"whether the evidence has such substance as to support the inference or deduction implicit in and necessary to sustain the affirmative conclusion"—generally is a question of law. *Tillman v. Stanley Iron Works,* 222 Minn. 421, 426, 24 N.W.2d 903, 905 (1946) (quoting *Susnik v. Oliver Iron Mining Co.,* 205 Minn. 325, 331, 286 N.W. 249, 252 (1939)). As discussed below, we conclude that the terminal question here—which of the two plans is most appropriate and most reasonable—rests on the application of the workers' compensation rehabilitation statute, Minn. Stat. § 176.102, to essentially undisputed facts and thus involves a question of law that the WCCA, and ultimately this court, reviews de novo.

■ When comparing one retraining program with another, we consider the sufficiency of the evidence while examining the purpose for retraining benefits. The purpose of retraining benefits is to return the employee "to his or her established preinjury employment status and to discontinu[e] workers' compensation benefits." *Wirtjes,* 479 N.W.2d at 715. Thus, retraining is intended to return the employee to a job that produces an economic status as close as possible to what the employee would have enjoyed without disability. This, of course, does not require precision, and a job that produces a "higher economic status than would have occurred without [the] disability is permitted if it can be demonstrated that this rehabilitation is necessary to increase the likelihood of reemployment." Minn.Stat. § 176.102, subd. 1(b) (2004). The term "necessary" means that which "will materially assist the employee in restoring his impaired capacity to earn a livelihood." *Wilson v. Crown Cork & Seal,* 503 N.W.2d 472, 475 (Minn.1993) (quoting *Norby v. Arctic Enter., Inc.,* 305 Minn. 519, 521, 232 N.W.2d 773, 775 (1975)).

According to decisions of the WCCA, the factors considered in determining eligibility for retraining include: (1) the reasonableness of retraining compared to returning the employee to work with the employer or through job placement activities; (2) the likelihood of the employee succeeding in a formal course of study given the employee's abilities and interests; (3) the likelihood that retraining would result in a reasonably attainable employment; and (4) the likelihood that retraining would produce an economic status as close as possible to that which the employee would have enjoyed without the disability. *Poole v. Farmstead Foods,* 42 Minn. Workers' Comp. Dec. 970, 978 (WCCA 1989). And the WCCA has said that when the employer and its insurer propose an alternative retraining plan, the compensation judge is to compare the plans by evaluating each plan in light of the *Poole* factors, considering the duration of the programs and the relative costs and effectiveness of each in returning the employee to an economic status as close as possible to that which would have been enjoyed without the disability. *Kunferman v. Ford Motor Co.,* 55 Minn. Workers' Comp. Dec. 464, 467–68 (WCCA 1996).

In this context, we conclude that the evidence is essentially undisputed that both the 2–year and 4–year retraining programs would provide a job that would return Varda to an economic status higher than she would have had without the disability. Garrison's testimony supports the conclusion that the 4–year program would be better, but her testimony does not support the conclusion that the 2–year program would not be appropriate or reasonable. Further, to the extent that Garrison based her preference for the 4–year program on the opportunity it would present for Varda to obtain management positions, it was without foundation in the record because Varda's own testimony showed that she did not have a management position prior to her disability. Her position was fundamentally data entry, with an opportunity to substitute as a supervisor for no more than one-fourth of the year. Viewed this way, the prospect of earning $20.55 an hour with a 2–year nursing degree would be a significant improvement to Varda's prior ability to earn $12.73 an hour for 9 months and $19.86 an hour for 3 months of each year, which combine to produce an annualized wage of $14.52 an hour.

The critical question then becomes whether the more costly 4–year program is "necessary to increase the likelihood of reemployment" within the meaning of Minn.Stat. § 176.102, subd. 1(b). Because the undisputed facts show that the 2–year program will restore Varda to an economic status higher than she enjoyed before the disability, we view that question as one of law and conclude that the fact that the 4–year program could be even more beneficial than the 2–year program does not establish that it is "necessary." To the contrary, we agree with the WCCA's conclusion that, because both retraining programs are appropriate and reasonable, the deciding factor in determining which program is necessary becomes the cost. As the WCCA noted:

> However, in this case, the record simply fails to establish that the employee would gain any significant economic advantage by attending the 4–year program sufficient to outweigh the immense additional cost. This is especially true given that it is essentially uncontroverted that the employee will easily be able to obtain physically suitable work, as a[n] RN with a 2–year degree, at a wage comparable to a 4–year RN and at a wage that equals or exceeds her pre-injury wage, and given that there is no evidence that the employee can reasonably expect to obtain work in one of her areas of special interest.

Affirmed.

ANDERSON, PAUL H. (dissenting).

### DISSENT

I respectfully dissent. Admittedly, this is a close case and, if I were the original trier of fact, I might well reach the same conclusion as the WCCA and the majority. But this case is before us on appellate review, so we are restrained by the appropriate standard of review. The WCCA is to affirm the findings of fact of a compensation judge unless the findings are "clearly erroneous and unsupported by substantial evidence in view of the entire record as submitted." Minn.Stat. § 176.421, subd. 1(3). Here, the record shows that there is substantial evidence to support the compensation judge's decision and therefore his decision is not clearly erroneous and should be affirmed.

In this case, as in most workers' compensation cases, there was conflicting expert testimony, and for that reason the WCCA and the majority have erred when they either explicitly or implicitly conclude

that most of the facts are undisputed. Garrison testified and the compensation judge concluded that Varda had specific physical limitations that would place some limitations on her employability as an RN. Specifically, the compensation judge concluded:

> As indicated in the Findings above, the employee is faced with a substantial delay if in fact she were to attempt to enter the 2–year program at Hibbing Community College. Further[,] as indicated by Ms. Garrison, testifying on behalf of the employee, in all likelihood [the] 2–year program would require an additional half-year of schooling. Of more significance, however, is that without a BA degree, without the 4–year program[,] the employee is not eligible to become a public health nurse or a school nurse. In addition[,] without that 4–year degree the employee in all likelihood would not be eligible to apply for or hold a supervisory nurse position—a position which generally is less physically taxing than the duties performed by a staff nurse. This is of more than passing importance in light of the employee's rather substantial physical restrictions.

Moreover, I believe that the WCCA erred in its role as a reviewing court when it substituted its findings for those of the compensation judge when it found "that it is essentially uncontroverted that [Varda] will *easily* be able to obtain physically suitable work, as a[n] RN with a 2–year–degree" (emphasis added). The record shows that it was disputed whether, given her physical limitations, Varda could obtain physically suitable employment after completing the 2–year program at Hibbing Community College.

Given our standard of review, I would reverse the WCCA and affirm the decision of the workers' compensation judge.

MEYER, Justice (dissenting).

I join in the dissent of Justice Paul H. Anderson.