Tessa M. WASHEK, Relator,

v.

NEW DIMENSIONS HOME HEALTH
and State Fund Mutual Insurance
Company, Respondents.

No. A12–0395.

Supreme Court of Minnesota.

April 10, 2013.

David R. Vail, Soderberg & Vail, L.L.C., Minneapolis, MN, for relator.

Andrew W. Lynn, Lynn, Scharfenberg & Associates, Minneapolis, MN, for respondents.

## OPINION

ANDERSON, PAUL H., Justice.

The issue presented in this case is the extent of New Dimensions Home Health's liability for structural changes necessary to the home of Tessa M. Washek in order to permit installation of a ceiling-mounted motorized lift system. A compensation judge found that the cost of making the structural changes was compensable under Minn.Stat. § 176.135 (2012) because those changes were necessary to provide Washek with reasonable and necessary medical treatment—namely, to minimize skin breakdown and reduce repetitive trauma to Washek's upper extremities. The Workers' Compensation Court of Appeals reversed the compensation judge, concluding that the changes to Washek's home necessary to permit installation of the lift system constituted "alteration or remodeling" of Washek's home and that the employer's liability was therefore limited by Minn.Stat. § 176.137 (2012). We affirm.

In 2002, relator/employee Tessa M. Washek suffered spinal cord damage and other injuries in a work-related motor vehicle accident and was rendered a paraplegic. Washek's employer, New Dimensions Home Health, and its insurer accepted

liability for Washek's injuries and have paid various workers' compensation benefits, including wage loss benefits, rehabilitation, and medical treatment. In addition, New Dimensions and its insurer have paid approximately $58,000 to make Washek's home more accessible for her special needs.

The record before the compensation judge indicates that between 2002 and 2009, Washek suffered from several health problems as a consequence of her disability. For example, Washek has had multiple dermatologic issues, including an ulcer in the sacral region that required surgery in 2005. She also developed carpal tunnel syndrome in both wrists that required surgery in 2006.

In 2009, an accessibility specialist who visited Washek's home observed that the toilet in Washek's bathroom was equipped with a gel seat, but because the seat could not be securely fastened to the toilet, it often shifted as Washek slid onto it from her wheelchair. As a result of this complication, Washek stopped using the gel seat. Although Washek's home is equipped with a roll-in shower stall, Washek had difficulty transferring into and out of the shower chair, and in rolling the shower chair over the threshold to the shower stall and over the threshold between the bathroom and her bedroom. There were also concerns expressed about Washek falling out of the chair. The design of the bathroom made reconfiguration difficult.

The accessibility specialist's solution to the foregoing problems was the installation of a remote-controlled, ceiling-mounted lift system extending from Washek's bedroom to the toilet and shower stall in Washek's bathroom. With the lift system, the specialist reasoned, Washek could leave the shower chair in the shower stall itself and lower herself into the chair, thus eliminating the need to propel the shower chair over the various thresholds. In addition, the lift system would allow Washek to lower herself onto the toilet's gel seat, rather than attempting to slide onto the seat. This procedure would eliminate the "shearing" of the skin on Washek's buttocks when she would slide onto the toilet.

In June 2010, Washek filed a medical request seeking payment for the installation of the lift system. The cost of the system itself, delivered and installed, was estimated at $15,414. New Dimensions and its insurer agree that the lift system is reasonable and necessary to "cure and relieve" the effects of Washek's work-related injuries and that the cost of the lift system, installed, is a medical expense that is compensable under Minn.Stat. § 176.135.

The lift system's vendor informed Washek that installation of the lift system would require Washek to make several modifications to her home to accommodate the system. For example, installation of the track requires that the path of the track be "free from lighting fixtures, smoke/CO detectors, ceiling and bath fans, and any other obstructions on the ceiling." Installation of the track also requires "[r]ais[ing] all door headers above or flush with the ceiling level," installing "solid wood blocking above and flush to [the] drywall ... capable of supporting 500 lbs. on the track at every point along the track where a support will be located," and "provid[ing] an electrical outlet at [the] charging end of [the] track." Washek obtained bids for this work from two building contractors in the amounts of $14,823 and $12,930, respectively.

New Dimensions and its insurer contend that the modifications to Washek's home constitute an alteration or remodeling of the home, and that New Dimension's liability for these modifications is governed by Minn.Stat. § 176.137, subd. 1, which reads in part as follows:

The employer shall furnish to an employee who is permanently disabled because of a personal injury suffered in the course of employment with that employer such alteration or remodeling of the employee's principal residence as is reasonably required to enable the employee to move freely into and throughout the residence and to otherwise adequately accommodate the disability.

Under the version of section 176.137 at issue here, an employer's liability for "alteration or remodeling of the employee's principal residence" is limited to $60,000.[1] Minn.Stat. § 176.137, subd. 5 (2010). Because New Dimensions and its insurer have already paid approximately $58,000 to remodel Washek's home to accommodate her disability, New Dimensions and its insurer contend that their liability for this work is no more than approximately $2,000.

A compensation judge found that the installation of the lift system involved permanent structural changes to Washek's home. Nevertheless, the judge found that the cost of these changes was a medical expense compensable under Minn.Stat. § 176.135, which includes no limit on employer expenditures, and ordered New Dimensions and its insurer to pay for the modifications in their entirety. The judge reasoned that Washek could not use the lift system until the track is installed, and therefore the installation of the track was "necessary in order for the employer/insurer to 'furnish' the reasonable and necessary lift device," making the cost of the

structural changes a compensable medical expense under section 176.135.

A divided Workers' Compensation Court of Appeals (WCCA) reversed the compensation judge. The WCCA acknowledged that installation of the lift system would "yield reasonable and necessary medical benefits for the employee," including prevention of further skin breakdown and lessening of repetitive trauma to Washek's arms. *Washek v. New Dimensions Home Health*, 2012 WL 683070, at *3 (Minn. WCCA Feb. 7, 2012). The WCCA further acknowledged that installation of the lift system would enable Washek to transfer to and from her wheelchair more safely and to live more independently. *Id.* Finally, the WCCA acknowledged that the lift system itself could not "be 'furnished' within the meaning of Minn.Stat. § 176.135 until it is installed and available" for Washek's use. *Id.* But the WCCA concluded that the structural changes required to install the lift system constituted "remodeling" of Washek's residence which is governed by Minn.Stat. § 176.137. *Id.* at *4.

The WCCA must affirm the compensation judge's findings of fact unless they are "clearly erroneous and unsupported by substantial evidence in view of the entire record as submitted." Minn.Stat. § 176.421, subd. 1 (2012). Here, the relevant facts—Washek's condition, the cost of the lift system, and the cost of the structural modifications that must be made to Washek's home to permit installation of the lift system—are undisputed and the sole question is whether the cost of the

---

1. Minnesota Statutes § 176.137 was first enacted in 1977. Act of May 20, 1977, ch. 177, § 1, 1977 Minn. Laws 291, 291–92 (codified at Minn.Stat. § 176.137 (2012)). Prior to its enactment, there was no specific provision in Minnesota law requiring employers to pay for alteration or remodeling of an injured worker's residence to accommodate a work-related disability. Although the dollar limit on the employer's liability has increased over time, *see* Act of May 24, 2011, ch. 89, § 14, 2011 Minn. Laws 364, 369 (increasing subdivision 5 limit to $75,000), the statute has remained substantially the same as when it was originally enacted. *Compare* Minn.Stat. § 176.137 (2012), *with* Minn.Stat. § 176.137 (1978).

structural modifications is compensable under Minn.Stat. § 176.135 or under Minn. Stat. § 176.137. The interpretation of applicable statutes is a question of law, which we review de novo. *Varda v. Nw. Airlines Corp.*, 692 N.W.2d 440, 444 (Minn.2005). The application of the law to undisputed facts is also a question of law that we review de novo. *See Metro. Sports Facilities Comm'n v. Cnty. of Hennepin*, 561 N.W.2d 513, 515 (Minn.1997).

■ We begin our analysis with the language of the two statutes at issue. Minnesota Statutes § 176.135, subdivision 1, requires the employer to

> furnish any medical, psychological, chiropractic, podiatric, surgical and hospital treatment, including nursing, medicines, medical, chiropractic, podiatric, and surgical supplies, crutches and apparatus, including artificial members, . . . as may reasonably be required at the time of the injury and any time thereafter to cure and relieve from the effects of the injury.

Minnesota Statutes § 176.137, subdivision 1, requires the employer to

> furnish to an employee who is permanently disabled because of a personal injury suffered in the course of employment with that employer such alteration or remodeling of the employee's principal residence as is reasonably required to enable the employee to move freely into and throughout the residence and to otherwise adequately accommodate the disability.

When interpreting these statutes, we are to construe the words and phrases according to the rules of grammar and common usage. *See Abrahamson v. St. Louis Cnty. Sch. Dist.*, 819 N.W.2d 129, 133 (Minn.2012) (citing Minn.Stat. § 645.08(1) (2010)).

■ In order to install the track for the ceiling-mounted lift system in Washek's home, contractors must relocate existing ceiling light fixtures and then re-install them in new locations; remove existing ceiling fans and re-install them in new locations; install blocking in the ceiling along the path of the track; and raise the headers over various doors to be flush with the ceiling. It will also be necessary to reframe the bathroom to accommodate pocket doors. Given the nature of the foregoing structural changes, we need not attempt in this case to define the outer limits of expenditures encompassed by section 176.137. Setting such limits here is not necessary because we conclude that by any definition, the changes required to Washek's home to permit the installation of the ceiling-mounted track lift system constitute "alteration or remodeling" of the residence.

Washek does not dispute that the work required to permit installation of the lift system amounts to alteration or remodeling of her residence; rather, she asserts that "whether the work is defined as 'remodeling' is not the controlling factor." Washek argues that the lift system has not been "furnished" to her until it has been installed. The question, according to Washek, is whether the work is necessary in order to provide her with reasonable and necessary medical treatment. We conclude that this argument fails on its merits.

■ What is at issue here is not the cost of installation of the lift system, but the cost of the structural modifications necessary to permit the lift system to be installed and used. New Dimension's liability under Minn.Stat. § 176.135, subd. 1(a), is limited to furnishing reasonably necessary medical treatment, including "apparatus" to "cure and relieve from the effects of the injury." New Dimensions and its insurer

do not dispute that their obligation to "furnish" the ceiling-mounted lift system includes the cost of its installation. The expenditures at issue here are for construction labor and building materials, which do not constitute "apparatus" or medical treatment under Minn.Stat. § 176.135 and which themselves do not "cure and relieve from the effects of the injury."[2] Minn.Stat. § 176.135, subd. 1(a).

For all the foregoing reasons, we conclude that the cost of the structural modifications to Washek's residence that are necessary to permit the ceiling-mounted track system to be installed are "alteration or remodeling" costs subject to Minn.Stat. § 176.137, and are not costs of medical treatment. Therefore, we hold that the WCCA did not err and affirm the decision of that court.

Affirmed.

WRIGHT, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

PAGE, Justice (dissenting).

I respectfully dissent.

This case calls on us to interpret Minn. Stat. §§ 176.135 and 176.137 (2012). In interpreting a statute, our goal "is to as-certain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2012). "When a statute is clear and unambiguous, our task is limited to construing the words of the statute according to their plain and ordinary meaning." *Schatz v. Interfaith Care Ctr.,* 811 N.W.2d 643, 649 (Minn. 2012).

Under section 176.135, an employer must "furnish" to an injured employee any medical treatment, including "apparatus," that "may reasonably be required at the time of the injury and any time thereafter to cure and relieve from the effects of the injury." Minn.Stat. § 176.135, subd. 1. The parties agree that the ceiling-mounted motorized lift system constitutes a compensable medical expense under this statute.

But in addition to the device itself, the compensation judge found that the costs of installing the device, including the necessary modifications to Washek's home, were also compensable under section 176.135. This conclusion was not in error. The statute requires the employer to "furnish" the apparatus to the employee, and the ceiling-mounted lift system has not been furnished within the plain meaning of section 176.135, subdivision 1, until it is fully installed and operational. Webster's Dic-

---

2. We must interpret a statute as a whole "to harmonize all its parts and, whenever possible, no word, phrase or sentence should be deemed superfluous, void or insignificant." *Owens v. Federated Mut. Implement & Hardware Ins. Co.,* 328 N.W.2d 162, 164 (Minn. 1983). The dissent urges us to conclude that the expenditures associated with installing the lift system are covered by Minn.Stat. § 176.135. In doing so, the dissent focuses on the language in section 176.137 that describes expenditures that are "required to enable the employee to move freely into and throughout the residence." Minn.Stat. § 176.137, subd. 1. To be sure, the dissent is correct when it observes that "[e]nabling an injured worker to freely move into and throughout her home is not the same thing as curing and relieving the effects of that injury." But the limit under section 176.137 applies not only to expenditures "required to enable the employee to move freely into and throughout the residence," but also to expenditures for "alteration or remodeling of the employee's principal residence ... to *otherwise adequately accommodate the disability.*" *Id.* (emphasis added). And while the *overall* purpose of the installation of the lift system is to alleviate Washek's injury, the *specific* expenditures at issue here would result in "alteration or remodeling" of Washek's residence to accommodate her paraplegia, and therefore are covered by Minn.Stat. § 176.137.

tionary defines "furnish" as "to provide or supply with what is needed." *Webster's Third New International Dictionary* 923 (1993). The reasonable and necessary medical device is worthless to Washek, and does not "cure and relieve" the effects of her injury, as long as it merely sits in a box. Put another way, the employer has not provided Washek with what is needed to "cure and relieve" the effects of her compensable injury until the lift system is installed and functional in her home. Therefore, the employer has not met its statutory obligation under section 176.135 until it has paid to have the device installed, and the device has been installed, in the home. The Workers' Compensation Court of Appeals (WCCA) understood this requirement. *Washek v. New Dimensions Home Health,* 2012 WL 683070, at *3 (Minn. WCCA Feb. 7, 2012) ("It is undisputed that the installation of the lift system will yield reasonable and necessary medical benefits for the employee. . . . [W]e agree . . . that the necessary medical apparatus in this case cannot be 'furnished' within the meaning of Minn.Stat. § 176.135 until it is installed and available for use by the employee."). Yet, it nonetheless denied Washek's claim.

Like the WCCA, the court concludes that the compensation judge erred in finding the structural changes to Washek's home compensable under section 176.135, despite the fact that the changes are essential to provide what is needed for the device to function. According to the court, the costs associated with installing the device are more properly characterized as "alteration or remodeling" costs subject to Minn.Stat. § 176.137, subd. 1. That section requires the employer to furnish to a permanently disabled employee "such alteration or remodeling of the employee's principal residence as is reasonably required to enable the employee to move freely into and throughout the residence and to other-

wise adequately accommodate the disability." *Id.* For the purposes of this case, the employer's liability under this section is limited to $60,000. *Id.,* subd. 5 (2010).

The problem with the court's analysis is that it treats the compensation judge's decision as though the device was determined to be compensable as an "alteration or remodeling" expense that is "reasonably required to enable the employee to move freely into and throughout the residence and to otherwise adequately accommodate the disability." Minn.Stat. § 176.137, subd. 1. But that is not what the compensation judge found. As discussed earlier, the compensation judge clearly found that the lift system is compensable because it is reasonably necessary to "cure and relieve the effects" of Washek's injuries. Minn. Stat. § 176.135, subd. 1. Enabling an injured worker to freely move into and throughout her home is not the same thing as curing and relieving the effects of the injury. Similarly, accommodating a disability is not the same thing as curing and relieving the effects of the injury. To "accommodate" means to "adapt" or "make fit, suitable, or congruous." *Webster's Third New International Dictionary* 12 (1993). "Cure," on the other hand, means:

> 1: HEAL a: to restore to health, soundness, or normality . . . b: to bring about recovery from . . . 2 a: to treat so as to remove, eliminate, or rectify . . . b: to free or relieve (a person) from an objectionable or harmful condition or inclination.

*Id.* at 555. As the compensation judge recognized, the overall purpose of installing the lift system was to heal and eliminate *specific and tangible physical harms*—including skin breakdown and trauma to the upper extremities—that Washek experienced as a result of her

injury, not to make her home suitable for her disability generally.

By conflating the provisions of Minn. Stat. §§ 176.135 and 176.137, the court has effectively amended section 176.135 and imposed a judicial cap on benefits intended to cure and relieve injured workers' injuries. Moreover, by treating the compensation judge's decision as though the device was determined to be compensable as an "alteration or remodeling" expense, the court has improperly substituted its own factual finding for that of the compensation judge. This it is not allowed to do. Rather, we must affirm such findings unless they are "unsupported by substantial evidence" in view of the record as a whole. Minn.Stat. § 176.421, subd. 1 (2012); *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 60 (Minn.1984) (stating that, in reviewing workers' compensation decisions, we do not "determine what we would prefer the findings to be").

The court's analysis is also faulty for another reason. Under the court's holding, if a cost can be characterized as an "alteration or remodeling" expense, section 176.137 and its compensation cap apply, even if the only purpose of the expenditure is to cure and relieve the effects of the worker's compensable injury under section 176.135. But nothing in the plain language of either section 176.135 or section 176.137 compels that conclusion. Sections 176.135 and 176.137 do not reference one another, and nothing in section 176.135 suggests that the employer's liability under that statute is subject to, or in any way limited by, section 176.137's compensation cap. Likewise, the compensation cap in section 176.137 by its own terms does *not* extend to expenses found compensable under section 176.135. *See* Minn.Stat. § 176.137, subd. 5 (limiting an employee's compensation *"under this section"* (emphasis added)).

My reading does not ignore section 176.137 or render that section superfluous. I merely read the plain language of the statutes in this case in the only way that gives meaning to each of them, and explain why, when read in conjunction, the compensation judge's decision is supported. Reading sections 176.135 and 176.137 as a whole reveals that the Legislature intended each section to be a separate and independent basis for employer liability. Indeed, each places an obligation on the employer using the affirmative phrase "[t]he employer shall furnish." Minn.Stat. §§ 176.135, subd. 1, 176.137, subd. 1. Section 176.135 obligates the employer to furnish treatment and apparatus reasonably required to cure and relieve from the effects of injury. Section 176.137 imposes the additional obligation to furnish alteration and remodeling of a residence in order to move freely into and throughout the residence and to otherwise accommodate the disability. As the court notes, section 176.135 was already in existence when the Legislature enacted section 176.137 in 1977. *See* Minn.Stat. § 176.135 (1976); Act of May 20, 1977, ch. 177, § 1, 1977 Minn. Laws 291, 291–92 (codified at Minn.Stat. § 176.137 (2012)). By merely *adding* a new remedy under section 176.137, the Legislature, absent an explicit statement that it was doing so, could not have intended to diminish or limit the existing remedy under section 176.135. Admittedly, as this case shows, the obligations imposed by the two sections may appear to overlap in some respects. But when, as here, the compensation judge finds an expense compensable under section 176.135, and there is no finding that it is compensable under section 176.137, the apparent overlap is of no moment and the compensation cap under section 176.137 has no applicability.

For all the foregoing reasons, I would reverse the decision of the WCCA and reinstate the Findings and Order of the compensation judge.